United States Court of Appeals,

Fifth Circuit.

No. 92-5598.

Walter P. PURCELL, Plaintiff-Appellee, Cross-Appellant,

v.

SEGUIN STATE BANK AND TRUST COMPANY, Defendant-Appellant, Cross-Appellee.

Sept. 2, 1993.

Appeals from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, WILLIAMS, and JONES, Circuit Judges.[1]

JERRE S. WILLIAMS, Circuit Judge:

In early 1989, Seguin State Bank and Trust Company replaced 60-year-old plaintiff, Walter P. Purcell, as manager of the Bank's trust department. His replacement was a man 37 years of age; Purcell was 60. Purcell brought suit in federal court, claiming violations of the Age Discrimination in Employment Act (ADEA) and of the Employee Retirement Income Security Act of 1974 (ERISA). Purcell also asserted a state claim of self-compelled defamation. The district court granted the Bank judgment as a matter of law on the defamation claim, and the jury found for Purcell on the ADEA claim. The Bank timely appealed the judgment against it, and Purcell has cross-appealed the judgment on the defamation claim.

After a thorough review of the record, we affirm the judgment that the Bank discharged Purcell because of his age. We also affirm the district court's judgment for defendant on the

---

[1]Judge Williams authored this opinion before his death on August 29, 1993.

defamation claim and its award of attorney's fees.  We reverse and remand for new trial the finding of willfulness, necessarily reversing the award of liquidated damages.  Finally, we remand the award of compensatory damages for remittitur or for a new trial on damages only.

In 1984, Seguin State Bank and Trust Company (the Bank) hired Walter P. Purcell to help create and to manage a trust department. Purcell was 55 years old when he was hired.  Purcell had worked previously in the Estate and Gift Tax Division of the Internal Revenue Service for sixteen years.  In early 1989, however, the Bank hired a 37-year-old replacement for Purcell, citing Purcell's poor management techniques and technical deficiencies.  Despite some conversation about the possibility of a marketing position for him, Purcell left the bank.

Joe Bruns, president of the Bank, had thought Purcell was 56 when he was hired.  Purcell was thus ineligible to participate in the Bank's retirement program because employees at that time had to work ten years before vesting, which had to occur by the time an employee reached 65.  Bruns subsequently learned that Purcell had been 55 when he was hired and informed him of his eligibility for the retirement program.

Problems arose during Purcell's years in the trust department. First, Bruns repeatedly counseled Purcell about improving his marketing efforts.  Second, monthly computer reports prepared by Purcell's secretary sometimes contained mistakes and miscategorization of assets.  Purcell claimed these errors resulted from his secretary's inability to understand and manipulate the

accounting software the department was using. The Bank worried, on the other hand, that Purcell did not fully grasp substantive trust accounting procedures. Third, Purcell incorrectly advised the Bank that it did not need to comply with a particular tax code provision. Fourth, the trust department realized net profit for the first time in 1988. The Bank noted, however, that Purcell arrived at the profit figure by collecting fees in 1988 for work not performed until 1989. Fifth, clerical employees in the trust department complained of Purcell's poor management and requested transfers. The Bank's officers thus became concerned that Purcell was mismanaging trust assets and subjecting the bank to serious potential liability.

The Bank also faced changes in its retirement plan. These changes had been mandated by the 1986 amendments to ERISA and were to go into effect on November 1, 1989. One amendment shortened the vesting period from ten years to five, allowing Purcell's retirement benefits to vest while he was between the ages of 60 and 65.

In late 1988, Bruns consulted an employment law attorney for advice regarding the situation with Purcell. He also advertised anonymously for applicants to replace Purcell and interviewed Mike Barrow in January 1989. Barrow was then in his thirties. The Bank hired Barrow as trust department manager on January 19, 1989. Bruns, however, did not inform Purcell that he was being replaced until February 3, three days before Barrow was to begin working. At that meeting, Bruns first told Purcell he was being replaced because of poor management and technical deficiencies. Bruns then

told Purcell that if Purcell would maintain a positive attitude, cure his technical deficiencies, and help train Barrow, the Bank would pay him three months' salary. At the end of that indefinite period of time, Bruns said, he would evaluate Purcell and possibly create a marketing position for him at a substantially reduced salary.

In the days following Purcell's replacement, Bruns told Purcell that he had not been fired and that the officers wanted Purcell to return to the Bank to concentrate on sales. By February 23, however, Purcell notified the Bank that he had no intention of continuing to work there. Purcell then practiced law in Seguin for about one year, moved to Galveston where his son was attending school, and worked most recently as a substitute school crossing guard.

Purcell's case was tried before a jury in March 1992. After Purcell rested, the Bank moved for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a). The district court granted judgment for the Bank on the self-compelled defamation claim, which was based upon Purcell's assertion that he was forced to defame himself by telling prospective employers why he left his position with the Bank. The court then sent the ADEA claim to the jury for decision. The jury reached a verdict, finding that:

1. Purcell was discharged;

2. age was a "determining" factor in Purcell's discharge;

3. the Bank's actions were willful; and

4. Purcell had sustained damages in the amount of $250,000.

The Bank filed a Motion for Judgment as a Matter of Law, a

Motion for New Trial, and a Motion for Remittitur and Denial of Liquidated Damages. The district court denied all motions and entered final judgment, awarding Purcell $250,000 compensatory damages; $250,000 liquidated damages for willfulness; reinstatement; $75,000 in attorney's fees; and post-judgment interest. The Bank timely appealed, and Purcell cross-appealed the district court's judgment on the self-compelled defamation claim. Pending appeal, the Bank filed a supersedeas bond with the court, which stayed all facets of the judgment, including reinstatement.

ERISA Claim

Purcell offers as support for his ADEA claim evidence that the Bank discharged him to prevent him from vesting in his pension benefits. Vesting in the Bank's pension program, however, was triggered by years of service instead of by reaching a certain age. Because Purcell's vesting was not age-based, any interference with his pension benefits may have been actionable under ERISA, but not under the ADEA. *Hazen Paper Co. v. Biggins,* --- U.S. ----, ----, 113 S.Ct. 1701, 1707-08, 123 L.Ed.2d 338 (1993). There is "no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at ----, 113 S.Ct. at 1705.

Purcell pleaded that the Bank had violated ERISA by discharging him so that he would not vest in the retirement program. He presented evidence at trial to support this contention. He failed, however, to request that the jury make a finding about whether the Bank violated ERISA. Only the ADEA and defamation claims were presented to the jury. Under Federal Rule

of Civil Procedure 49(a), Purcell waived his right to a trial by jury on the claim that the Bank violated ERISA. *In re Letterman Bros. Energy Sec. Litig.,* 799 F.2d 967, 976 (5th Cir.1986). Rule 49(a) authorizes the court to make a finding on omitted issues, but here the district court made no mention of the ERISA claim in its judgment. Consequently, "it shall be deemed to have made a finding in accord with the judgment on the special verdict." Because the ERISA and ADEA claims are separate, there is no court finding on the ERISA claim. *See, e.g., MBank Forth Worth, N.A. v. Trans Meridian, Inc.,* 820 F.2d 716, 723-24 (5th Cir.1987) (finding waiver of plaintiff's RICO counterclaim). We do not consider it.

ADEA Claim

The ADEA makes it unlawful for employers "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To succeed on his claim, Purcell had to prove both that he was discharged and that his age had "a determinative influence on the outcome." *Hazen Paper Co. v. Biggins,* --- U.S. ----, ----, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). Congress additionally created a "two-tiered liability scheme" in the ADEA by providing that "some but not all ADEA violations would give rise to liquidated damages." *Id.* at ----, 113 S.Ct. at 1709. Section 7(b) of the ADEA provides for liquidated damages in the event of a willful violation. 29 U.S.C. § 626(b). A defendant has acted willfully when it knows or shows reckless disregard for whether its conduct violated the ADEA. *Biggins,* --- U.S. at ----, 113 S.Ct. at

1710.  But a willful violation does not necessarily occur just because the employer knew that the ADEA was "in the picture."  When an employer believes in good faith that its decision is permissible under the ADEA, then liquidated damages are unwarranted.  *Id.* at ----, 113 S.Ct. at 1709.  Further, even when the plaintiff has proved willfulness, the court has discretion about whether to award liquidated damages.  *Elliott v. Group Medical and Surgical Serv.,* 714 F.2d 556, 558 n. 2 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

The jury found that the Bank willfully discharged Purcell and that a determining factor in the discharge was his age.  The court then denied the Bank's Motion for Judgment on the ADEA claim.  The Bank asserts that the evidence was insufficient to support the jury's findings of discharge, of age discrimination, and of willfulness.

*Waiver*

We must first decide whether the Bank has properly preserved these points of error.  After Purcell rested his case, the Bank moved for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a).[1]  The Bank then renewed its Motion for Judgment after the verdict, in accordance with Rule 50(b).[2]  It did not, however, reurge its motion at the close of all the evidence.  The failure to renew the motion for judgment at the close of *all* evidence can have two consequences.  First, the Bank may have

---

[1]Before the 1991 amendments to Rule 50, this motion was known as the motion for directed verdict.

[2]Before the 1991 amendments to Rule 50, this motion was known as the motion for Judgment Non Obstante Verdicto, or JNOV.

waived its right to complain on appeal about the sufficiency of the evidence. Second, the Bank may have also waived its right to file a post-verdict Motion for Judgment. *McCann v. Texas City Ref., Inc.,* 984 F.2d 667, 671 (5th Cir.1993); FED.R.CIV.P. 50(b).

We have construed Rule 50(b) to allow review when the purposes of the rule have been satisfied because the court has had the opportunity to reconsider sufficiency as a matter of law and because the nonmovant has had the opportunity to cure any insufficiencies. *See, e.g., Davis v. First Nat'l Bank,* 976 F.2d 944, 948-49 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2341, 124 L.Ed.2d 251 (1993). We hold generally that "when the trial court reserves its ruling on the defendant's motion for a directed verdict and the only evidence introduced after the motion is not related to the motion, the defendant's failure to renew his motion should not preclude a judgment n.o.v. in his favor." *Miller v. Rowan Cos., Inc.,* 815 F.2d 1021, 1025 (5th Cir.1987). In such cases, the judge took the defendant's motion under advisement or declined to grant it "at this time." The defendants then offered little or no evidence, and there was little or no rebuttal. Very little time passed between the first motion and the close of all evidence. In *Davis,* for example, the defendant called one witness, the plaintiff was recalled, and the case was closed within a few minutes of the original motion. Finally, if the defendant objected to the proposed jury instructions on grounds pertaining to sufficiency of the evidence, we have held that to satisfy the purposes of Rule 50(b). *Villanueva v. McInnis,* 723 F.2d 414, 417-18 (5th Cir.1984).

On the other hand, when those purposes have not been satisfied, the operation of the rule results in waiver. *See, e.g., McCann,* 984 F.2d at 671-73; *Hinojosa v. City of Terrell, Texas,* 834 F.2d 1223, 1228 (5th Cir.1988), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989). In *Hinojosa,* the defendant did not move for judgment at any time before the verdict was returned. In *McCann,* the judge flatly denied the motion at the close of plaintiff's evidence, the defendant offered its case followed by rebuttal, and it then failed to renew the motion in any way. Finally, if the first motion for judgment fails to state specific grounds that the defendant then urges in the post-verdict motion, we cannot consider the motion. *McCann,* 984 F.2d at 672 (citing FED.R.CIV.P. 50(a)).

Examining the facts before us, we conclude that the Bank has waived its right to complain about sufficiency of the evidence in a post-verdict motion for judgment. As in *McCann,* the judge flatly denied the Bank's initial motion for judgment instead of taking the motion under advisement. The Bank then presented its case. Although the time between the close of Purcell's evidence and the close of the case was a matter of hours, the Bank offered five witnesses, followed by rebuttal testimony from Purcell. The Bank did not object to the proposed jury instructions and charge. Finally, also as in *McCann,* the initial motion focused on the evidence of age discrimination. The Bank's post-verdict motion specifically challenged the sufficiency of the evidence of willfulness for the first time. We find that *McCann* controls.

It follows that the Bank is raising these issues for the first

time on appeal.  We can review them only for plain error.  Under the plain error standard, we reverse a judgment only if it results in the "manifest miscarriage of justice."  *McCann,* 984 F.2d at 673 (quoting *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978)).  We consider "not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict."  *Id.*

*Age Discrimination*

To prove age discrimination, a plaintiff must first establish a prima facie case by showing (1) that he was within the protected age group, (2) that he was adversely affected (in this case, discharged), (3) that he was replaced by a younger person, and (4) that he was qualified for the job.  Then the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision.  If the defendant presents non-discriminatory reasons, the plaintiff has the burden of persuading the factfinder that those reasons are pretexts for unlawful discrimination.  *St. Mary's Honor Center v. Hicks,* --- U.S. ----, ---- - ----, 113 S.Ct. 2742, 2750-55, 125 L.Ed.2d 407 (1993) (reaffirming *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981)).  Because the case before us was tried fully on the merits, we need not consider the adequacy of either party's showing at these three stages.  We instead focus on the record as a whole to determine the sufficiency of the evidence.  *Atkin v. Lincoln Property Co.,* 991 F.2d 268, 271 (5th Cir.1993) (quoting *Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 118 (5th Cir.1993)).

The Bank claims that it neither discharged Purcell nor replaced him because of his age. Applying the plain error standard, however, we find the record contains some evidence to support the jury verdict. Most of Purcell's evidence was circumstantial, which is not unusual in an employment discrimination case. *Burns v. Texas City Ref., Inc.,* 890 F.2d 747, 750-51 (5th Cir.1989). The accumulation of circumstantial evidence more than meets the "any evidence" requirement of the plain error standard.

On the question of discharge, the Bank points to Bruns's notes from the February 3 meeting, where the officers informed Purcell he was being replaced. The Bank presented evidence that the officers told Purcell he would continue with the Bank, albeit for an unspecified time, and then move into a newly-created marketing position at a reduced salary. The Bank further cites evidence that Bruns informed the executive officers of Purcell's move into the marketing position; that Bruns reiterated the offer in a letter to Purcell on February 21, 1989; that the Bank reconfirmed Purcell as an officer on February 16, 1989; and that Purcell had told a friend, John Donegan, that he was refusing to accept the more "menial" marketing job.

Purcell in turn considers Bruns's notes, which were titled "TERMINATION COMMENTS." Purcell's evidence argues that Bruns made a vague, conditional offer by saying that IF Purcell maintained a positive attitude and helped with the transition, and IF Purcell acquired some unspecified technical knowledge, then the Bank would pay three months' salary and "*would consider* creating a sales

position for [Purcell], but at a reduced salary" (emphasis added). Purcell offered further evidence that Bruns's letter of February 21 and reconfirmation of Purcell as a bank officer were merely self-serving acts and that the Bank contested Purcell's right to unemployment compensation, to which Purcell would not have been entitled if he had resigned. On the question of whether discharge occurred, there clearly was enough evidence to support the jury finding as not in plain error.

On the age discrimination issue itself, the Bank cites evidence that Purcell's performance evaluations began in 1987 to reflect concerns about how Purcell was reporting and managing trust accounts; that the problems with the monthly reports indicated Purcell's lack of technical trust knowledge; that Purcell's pay raises were consistently lower than those of other officers; that a trust department customer actually sued the bank over mishandling of the customer's account; and that significant personnel problems beginning in 1988 resulted from Purcell's management style. The Bank also offered evidence of its pro-age policy.

Purcell's evidence, on the other hand, emphasizes that Bruns questioned Purcell about his age in the interview. More important, Purcell cites Bruns's response to problems with the computer-generated reports. Bruns stated that Purcell was being replaced in part because of "technical deficiencies," which led to errors on the monthly reports. Purcell asserts, however, that these errors were the result of incompetent clerical help; that he had continually requested more effective clerical help to catch up on a backlog of work; that Bruns did not respond to Purcell's

requests until three months before Purcell's discharge; that most of the computer errors were corrected by training the new employees; and that Bruns believed a younger employee would more likely have computer knowledge than an older employee. Bruns testified: "[M]ost younger trust officers that I've seen, as well as most younger officers, have the ability to make entries in computers. Because they've been trained in that way.... The older ones have tended not to be as knowledgeable about computers."

"It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Hazen Paper Co. v. Biggins,* --- U.S. ----, ----, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). While the Bank offered strong evidence of its pro-age attitude, Purcell offered evidence answering the Bank's emphasis on the problems with the computer and the report errors. Purcell's evidence suggested that Bruns believed Purcell to be incompetent on the computer and incapable of learning to use it, in large part because of his age. He presented adequate evidence to deny a plain error claim attacking the jury verdict that age was a determining factor in Purcell's discharge.

*Willfulness*

In addition to finding that the Bank had discharged Purcell because of his age, the jury found that the Bank had acted willfully. The Bank claims that the only evidence of willfulness was the fact that it consulted an employment law attorney before replacing Purcell, and it argues that this evidence indicates only its effort to avoid liability. Purcell counters that all of the

Bank's actions indicate reckless disregard of the ADEA's mandates. Purcell claims that Bruns began making notes of problems with Purcell only after he had decided to replace Purcell. According to Purcell, the Bank's complaint that Purcell was not versed in general tax matters rings hollow because those matters were beyond his job purview. Likewise, Purcell points out his evidence showed that he had no control over the personnel in his department and repeatedly asked for more or better-trained clerical help, all to no avail.

A review of the record reveals no evidence of willfulness. True, the Bank consulted an attorney about Purcell and knew the ADEA was "in the picture." But the evidence does not show that the Bank violated the ADEA either knowingly or with reckless disregard. We find, therefore, that the district court erred in denying the Bank's Motion for Judgment on the issue of willfulness. Because we review this question under the plain error standard, however, relief is limited to ordering a new trial. *McCann,* 984 F.2d at 673 (citing *Hinojosa v. City of Terrell, Texas,* 834 F.2d 1223, 1228 (5th Cir.1988), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989)); *see also* 5A JAMES W. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 50.05[1] (2d ed. 1993). We therefore remand for a new trial on the issue of willful violation of the ADEA.

Defamation Claim

The district court granted the Bank's Motion for Judgment on Purcell's defamation claim. Purcell cross-appeals this decision, arguing that there was sufficient evidence of both self-compelled defamation and malice to justify submitting this claim to the jury.

We review all the evidence in the light most favorable to the party opposed to the motion and consider whether there was substantial evidence of defamation so that reasonable jurors could exercise impartial judgment and arrive at differing conclusions. If so, the district court erred in granting judgment as a matter of law. *Boeing v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc).

In the controlling Texas law, a plaintiff cannot recover for injuries from publication of defamatory material if the plaintiff consented to, authorized, invited, or procured the publication. *Lyle v. Waddle,* 188 S.W.2d 770 (Tex.1945). The Texas courts, however, recognize the narrow exception of self-compelled defamation. For example, in *Chasewood Construction Co. v. Rico,* 696 S.W.2d 439 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.), the court held that self-compelled defamation occurred. A subcontractor was accused of stealing and was fired. The general contractor then ordered the subcontractor's crew offsite immediately. The crew demanded to know the reason for its sudden ouster, and the subcontractor had little choice but to reveal the defamation by way of explanation. Likewise, in *First State Bank of Corpus Christi v. Ake,* 606 S.W.2d 696 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.), the court found defamation occurred when the plaintiff had to disclose to prospective employers that his former employer had discharged him and filed a fidelity bond against him. The bond was later withdrawn as improperly filed.

Purcell argues that the Bank gave him false reasons for his discharge, and by doing so, created a foreseeable and unreasonable risk those reasons would be communicated to prospective employers.

Purcell testified that he was forced to admit the reasons given for his discharge when interviewing for new employment.  Because the Bank had a common interest in Purcell's discharge and the reasons for it, however, the Bank enjoyed a qualified privilege that could only be overcome if Purcell proved that the Bank acted with malice. *See* RESTATEMENT (SECOND) OF TORTS § 577 cmt. n (1977).  Malice has been defined as "knowledge of falsity or reckless disregard" for the truth of the statement.  *Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 571-72 (Tex.App.-Dallas 1989, no writ).  Proof of malice may be inferred from the circumstances of the case.  *Buck v. Savage,* 323 S.W.2d 363, 373 (Tex.Civ.App.-Houston 1959, writ ref'd n.r.e.).

Purcell argues that the standard for malice and for willfulness under the ADEA are similar.  Purcell cites the evidence he presented to prove willfulness as sufficient to prove malice.  Our review of the record, however, has convinced us that there is virtually no evidence the Bank willfully violated the ADEA.  There was not sufficient evidence of malice to justify submitting the defamation issue to the jury.  The district court thus did not err in granting the Bank's Motion for Judgment on the question of self-compelled defamation.

Damages

The Bank contends that the jury award of $250,000 in compensatory damages is clearly excessive.  Purcell presented evidence of lost earnings, of the value of his health insurance benefits, and of pension benefits.  Purcell's economist concluded that his total net loss, discounted to present value, was $308,296.

Although Congress has given courts broad discretion to fashion remedies, courts prefer in these cases to order reinstatement. They will award front pay only if they find that reinstatement is not feasible. *Hansard v. Pepsi Cola Metro. Bottling Co., Inc.,* 865 F.2d 1461, 1468-69 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). The district court found that reinstatement was feasible. It therefore sent to the jury only the question of lost back pay from discharge to trial. The jury determined that Purcell was entitled to $250,000.

Purcell presented evidence of back pay of $85,232 and lost insurance benefits of $27,227. The requested award thus totaled at most $112,459, less than half of the jury award. The Bank argues that even $112,459 is too much because the award of insurance benefits was improper under *Pearce v. Carrier Corp.,* 966 F.2d 958 (5th Cir.1992). In *Pearce,* we considered whether a successful ADEA claimant could recoup automatically the value of a health insurance fringe benefit. We held that the ADEA claimant was limited to recovery of actual expenses incurred either to purchase replacement health insurance or to pay for actual medical expenses. And the record shows that Purcell presented no evidence that he either purchased substitute insurance or paid for medical treatment that insurance would have covered.

Purcell argues, on the other hand, that in addition to back pay many elements justify the jury's award. Purcell applies *Pearce,* maintaining that it should be read to allow recovery of the value of insurance he tried to buy but could not afford. And he says he had to buy expensive medication for his wife. Purcell next

asserts that he was entitled to deferred compensation. He further points out that employment discrimination awards are not excludable from income, citing *United States v. Burke,* --- U.S. ----, ----, 112 S.Ct. 1867, 1874, 119 L.Ed.2d 34 (1992). *See also Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1579-80 (5th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). Purcell claims he should receive an amount that includes the taxes he will owe. Additionally, because the court ordered reinstatement but stayed reinstatement pending appeal, Purcell argues he should receive the amount of loss between trial and disposition of the appeal. Finally, Purcell contends that he had to sell his house at a loss after his departure from the Bank. Because he obtained his loan from the Bank, and because the payment of the loan was accelerated when Purcell left the Bank's employ, Purcell asserts that the Bank should cover this loss as well. Purcell now claims the following amounts to justify the award:

Back Pay: $ 85,232

Fringe Benefits:    27,227

Income Taxes:  33,107

Loss To Date of Appeal:  17,026

Loss on Sale of House:   10,000

_____

TOTAL:    $172,592  (plus any additional loss until the appeal has been exhausted)

-----

Purcell's contentions have little merit. Only the back pay and fringe benefits were submitted to the jury. Regarding insurance benefits, Purcell testified that he had elected to

continue his insurance coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), and that since those benefits expired he had been unable to purchase replacement insurance because it was too expensive. He nonetheless presented no specific evidence to prove that he had paid for the COBRA benefits, that he had attempted to buy replacement insurance, or that he had purchased medication for his wife. The insurance award was clearly improper. Regarding deferred compensation, Purcell's expert mentioned that it would increase the amount of lost earnings. She nevertheless presented no specific evidence of deferred compensation.

As far as income taxes are concerned, damages awarded "on account of personal injuries or sickness" are exempt from federal income tax. 26 U.S.C. § 104(a)(2). Purcell's economist expressly excluded income taxes from her calculations before she applied the discount rate to calculate the nontaxable, net present value of lost earnings. Back pay awards are nontaxable when they redress a tort-like injury. When Title VII awarded only backwages, it did not contemplate a tort-like injury, and back pay awards under Title VII were taxable. *Burke,* --- U.S. at ----, 112 S.Ct. at 1873-74. We have also held that the district court should calculate a Title VII award without reducing it to reflect income tax liability. *Johnston,* 869 F.2d at 1580.

Neither *Burke* nor *Johnston,* however, involved the ADEA. The Third, Sixth, and Ninth Circuit Courts of Appeals view the ADEA as redressing a tort-like injury. *See, e.g., Redfield v. Insurance Co. of N. Am.,* 940 F.2d 542 (9th Cir.1991); *Pistillo v.*

*Commissioner,* 912 F.2d 145 (6th Cir.1990); *Rickel v. Commissioner,* 900 F.2d 655 (3d Cir.1990). We have held that age discrimination is a tort claim for purposes of calculating the statute of limitations. *Jay v. International Salt Co.,* 868 F.2d 179, 180 (5th Cir.1989). Recently, the Tax Court reconsidered this issue in light of *Burke,* holding that ADEA claims are tort-like and that an entire ADEA award is nontaxable. *Downey v. Commissioner,* 100 T.C. 40, 1993 WL 231740 (1993). Applying *Downey,* we find the evidence properly presented a lost earnings amount net of tax. Increasing the award to reflect tax liability is improper.

Purcell's other justifications for the jury award come too late. Purcell's loss pending appeal was not relevant to the jury determination of back pay. And the loss Purcell incurred on the sale of his house bears no reasonable relationship to his departure from the Bank. The parties agreed to submit to the jury back pay from discharge to trial. Even including taxes, the maximum amount possible on the evidence was no more than $150,000. A jury may award a high amount, but it may not speculate beyond the range presented by the evidence. *Brunnemann v. Terra Int'l, Inc.,* 975 F.2d 175 (5th Cir.1992). The $250,000 award was excessive, and the district court abused its discretion in refusing to order a remittitur. We remand the case to the district court to recalculate the damages.

Purcell's final complaint concerns the district court's order to stay the judgment pending appeal. The stay also applied to the reinstatement order. Thus while the appeal has proceeded, Purcell has not been able to return to work at the Bank. Nevertheless, the

Bank filed a supersedeas bond to cover the costs of appeal and the damages, including Purcell's loss pending appeal. On remand, the district court can reconsider its reinstatement order in light of the passage of time. It can either award compensation to cover the lost wages during the stay, or it can determine that reinstatement is no longer feasible and award front pay.

Attorney's Fees

After trial, Purcell requested $92,800 in attorney's fees. He claimed that his attorney worked outside of court for 552 hours at a rate of $150 per hour and in court for 50 hours at $200 per hour. The Bank countered that Purcell's attorney was entitled to only $37,500, based on 300 hours of work at $125 per hour. The district court granted Purcell attorney's fees of $75,000 for 500 hours of work at $150 per hour. The Bank now contends that Purcell failed to support sufficiently its request for attorney's fees. We review the district court's award for abuse of discretion. *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1097 (5th Cir. Unit B 1981).

The ADEA incorporated the remedies authorized by the Fair Labor Standards Act. 29 U.S.C. § 626(b). The relevant provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b), provides that the "court in such action *shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant" (emphasis added). The language of the statute thus mandates that the district court award attorney's fees to the prevailing party, but it gives the court discretion in deciding what is reasonable.

To calculate reasonable attorney's fees, the district court

multiplies the number of hours worked by the hourly rate. Both hours and rate must be reasonable, and the court should consider only the hours spent on the successful claims. *Hensley v. Eckerhart,* 461 U.S. 424, 433-34, 440, 103 S.Ct. 1933, 1939, 1943, 76 L.Ed.2d 40 (1983). After calculating the basic fee, the district court can adjust the amount upward or downward to account for the well-established *Johnson* factors. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974). In this case the district court expressly took into account several of the *Johnson* factors when calculating the $75,000. It then declined to make any further adjustments.

The Bank argues that Purcell failed to present sufficient evidence because he did not submit detailed timesheets as required by Fifth Circuit Local Rule 47.8.1. The applicable rule, however, is the Western District of Texas Local Rule CV-7(j). Under Rule CV-7(j), a motion for attorney's fees must contain a listing of the activity, the attorney's name, the date, and the hours expended, all supported by an affidavit. The requesting attorney should also be prepared to submit timesheets if required "upon further order of the court." Purcell complied with the rule by submitting a motion, a supporting affidavit, a memorandum, and a detailed summary of the time his attorney spent on each activity. The district court requested no further documentation. The Bank responded thoroughly. Because the district court has reasonably calculated the fee and considered the *Johnson* factors, we hold that the district court did not abuse its discretion in awarding $75,000 in attorney's fees.

CONCLUSION

The district court did not err in submitting to the jury the questions of discharge and age discrimination, in granting the Motion for Judgment on the slander claim, and in awarding $75,000 in attorney's fees. The district court did err in denying the Bank's Motion for Judgment on the question of willfulness, and it abused its discretion in denying the Motion for New Trial or Remittitur and in awarding the $250,000 compensatory damages. We affirm the jury verdict's finding of discharge and age discrimination. We affirm the district court's judgment for the Bank on the slander claim. We reverse the finding of willfulness and remand for a new trial on this issue. Finally, we remand the case to the district court to order remittitur of the damages and reconsider reinstatement.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.