**Aubrey RAY, Plaintiff–Appellant Cross–Appellee,**

v.

**IUKA SPECIAL MUNICIPAL SEPARATE SCHOOL DISTRICT, et al., Defendants,**

**Tishomingo County Special Municipal Separate School District, Defendant–Appellee Cross–Appellant.**

No. 93–7332.

United States Court of Appeals, Fifth Circuit.

May 16, 1995.

Jim Waide, Tupelo, MS for appellant.

Michael D. Cooke, Iuka, MS, for appellee.

Before DAVIS, BARKSDALE and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This is a suit under the Age Discrimination in Employment Act (the "ADEA"), arising from the failure of the consolidated school district of Tishomingo County, Mississippi (the "School District"), to rehire former school principal Aubrey Ray following the consolidation of the Tishomingo County School District and the Iuka Special Municipal Separate School District. Ray, who has nineteen years of experience as a principal, had served as principal in the Iuka County School District for six years prior to bringing this suit.

The consolidation of the two school districts took effect on July 1, 1991. Pursuant to this plan, the Iuka school district sent a letter to its employees in January 1991 informing them that their contracts would not be renewed at the end of the school year. Ray received this letter, but did not interpret it as a notice of termination because it was understood that many Iuka employees would be hired by the consolidated school district.

Ray filed an application for a high school principal position in January of 1991 and for any other administrative position in February of 1991. In March, the School District hired Benny McClung, a man nine years Ray's junior with much less experience, to be the principal of the school where Ray had formerly been principal. In response, Ray filed an EEOC claim against the School District for age discrimination on March 11, 1991.

After holding an "executive session" to discuss the charge, the School District filed a response with the EEOC, claiming that Ray's suit was premature because some positions with the school remained vacant. The School District subsequently hired Robert Haggard, a person from out-of-state who had twelve years of experience, as principal of Magnet High School. It also hired John Mullins, a man from outside the district with 1.5 years of experience, as assistant principal.

Ray filed this complaint on June 26, 1991, alleging age discrimination and retaliation under the ADEA as well as violation of Mississippi's notice provisions. Ray voluntarily dismissed his age discrimination claim before the case went to the jury, and the court directed a verdict against the notice claims.

At trial, the School District claimed that its decision not to rehire Ray was based on his failure to maintain student discipline. Ray sought to show that this explanation was a pretext for retaliation by offering rebuttal evidence that he had been a good principal. Ray Rhodes, a former assistant principal, described Ray as an "even-handed disciplinarian." In addition, Dr. Jerry Clay Stone, the former superintendent of the Iuka school district and Ray's former supervisor, testified that following a joint school board meeting,

several board members approached him about Ray. A school board member had told him: "We might have been able to work out something like this if he had not sued us. I don't think you would hire somebody that had sued us."

. The jury concluded that the School District's decision not to rehire Ray was in retaliation for the EEOC charge and that the School District's conduct was a willful violation of the ADEA. The district court awarded actual and liquidated damages, but denied Ray's request for reinstatement, instead awarding front pay. The court also denied the School District's motions for judgment as a matter of law and, in the alternative, for a new trial. Ray appeals the district court's denial of reinstatement, and the School District cross-appeals the denial of its motions. Because a finding in favor of the School District on the district court's denial of its motions would render the issues raised by Ray moot, we will discuss the issues raised in the cross-appeal first.

## DISCUSSION

*Was there sufficient evidence to support the verdict?*

The School District cross-appeals the district court's denial of its motions on the basis that the jury's findings are unsupported by the evidence. This Court reviews a district court's denial of a motion for judgment as a matter of law to determine whether, based upon the entire record, a reasonable trier of fact could conclude that retaliation was a determinative factor in the decision not to rehire. *See Hansard v. Pepsi–Cola Metro. Bottling Co., Inc.,* 865 F.2d 1461, 1465 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989).

■ The Age Discrimination in Employment Act prohibits an employer from retaliating against an employee who has made a charge in a proceeding under the Act. 29 U.S.C. § 623(d). To prove retaliation by circumstantial evidence, a plaintiff must first establish a prima facie case by showing: (1) that he engaged in activity protected by the ADEA; (2) that an adverse employment action occurred; and (3) that a causal link between the participation in the protected

activity and the adverse employment decision exists. *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992). The defendant then bears the burden of producing a nondiscriminatory reason for its action. *Id.* The employee bears the ultimate burden of showing that the reasons given by the employer are a pretext for retaliation. *Id.*

■ The School District contends that Ray failed to show that the reasons that it articulated as the basis for its decision— specifically, that Ray failed to maintain discipline and was not a good administrator—was a pretext for retaliation. The School District claims that, absent some additional evidence of retaliatory motivation, Ray failed to present sufficient evidence that, but for the EEOC claim, he would have been rehired.

The Supreme Court addressed a long-standing controversy over the evidentiary burden in ADEA cases in *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In *Hicks,* the Court held that a plaintiff must show that the employer's proffered reason is not credible; and show that an unlawful discriminatory intent motivated the employer's action. *Id.* at ——, 113 S.Ct. at 2752. Under *Hicks,* "[i]t is not enough, in other words, to ‚ *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at ——, 113 S.Ct. at 2754.

The School District presented testimony that the high school experienced discipline problems during Ray's tenure. In rebuttal, Ray testified that during his six years as principal, no school board member had ever voted against his re-employment; that the Tishomingo school district had once tried to hire him away from the Iuka school district; that each board member had assured him after McClung was hired that his performance was not a factor; that he was more qualified than the other people hired; and that the Board had not mentioned performance in its response to the EEOC.

Ray's testimony was corroborated by other witnesses. Dr. Stone testified that, although he had heard some complaints about discipline, Ray had been an "outstanding" principal and a "model" administrator. The Su-

perintendent of the Baldwyn school district, where Ray is now employed, testified that Ray was doing a "great job" and that he was impressed with Ray's even-handed disciplinary style. A former assistant principal also contradicted the School District's testimony as to the extent of the disciplinary problems. We conclude that, from this evidence, the jury could reasonably conclude that the School District's explanation for not hiring Ray was pretextual. *See Hansard, supra,* 865 F.2d at 1465 (where only evidence of poor performance is testimonial, jury can discredit it).

More importantly, Ray also presented evidence that the School District's true motive in not hiring Ray was retaliation: Dr. Stone testified that, following a joint board meeting, a board member had told him that Ray might have been hired had it not been for the EEOC charge.[1] In attacking this evidence, the School District points out that Stone could not attribute this statement to any particular person, and could not recall whether it was made by one of the old or new board members. The School District also points out that Stone testified on cross-examination that he was not aware of any retaliation by any of the board members. In effect, the School District argues that inconsistencies or seeming contradictions in Stone's testimony rendered him unworthy of belief by

---

1. Dr. Stone's exact testimony on direct examination was as follows:

Q Would you tell the jury whether after that EEOC charge was filed any board members from either the Iuka district, the county district, or the new consolidated district, ever talked to you about either filing of the charge or what you thought about Aubrey Ray?

A The filing the charge was generally referred to in the community as suing the school, suing us. There was one occasion on, after a joint board meeting, in the front steps of the courthouse after the meeting, several of the board members and I were standing there, and I was asked the question if the Iuka school was still the Iuka school, would I recommend Mr. Ray. And I said, in effect, I said, Yes, I had recommended him many times. And then it came back to me that there might be some problem with Mr. Ray on—as being principal of the Magnet school, which was the new school.

So I said at that time that, Well, there were many duties that Mr. Ray could perform for the district. He's a high ranking officer in the National Guard and fairly skilled carpenter and several other things. I said there would be many things he could contribute to the district. Then it came back to me that we might have been able to work out something like this if he hadn't sued us. And I don't think you would hire somebody that had sued us. And that was pretty well the end of the conversation.

Q All right, sir. Dr. Stone, what—can you recall specifically what board members were present when that statement was made?

A I can recall some of them. All the board members were there, I think. It just happened, as far as I'm concerned. It just—it was just—it just happened right there. The people standing real close to me were Mr. Walker—

Q Excuse me. Mr. Earl Walker?

A Mr. Earl Walker.

Q He's on the city board; right?

A That's right.

Q Okay.

A And Mr. Bonds, who is now back on the board, who at that time was on the county board. And I think Mr. Phillips was there, right with me, and then there was other groups formed around in different places.

Q All right. So that was not a formal board meeting? That was just a meeting after—

A No, unh-unh. It was not a board meeting.

Q All right. Looking over at the counsel table, were any of the board members that are seated here in the courtroom present at that meeting, that you recall?

A Well, at the meeting I suppose—I suppose everybody was there at the meeting. At the discussion out in front of the meeting, I guess they were all there. I don't know that they were all standing real close to me, though.

Q You don't know that they all heard that comment—

A No.

Q —is that what you're saying?

A Right.

THE COURT: Who made this comment?

A I—I have been asked that question before, and I honestly cannot say. It was a series of questions that came to me in a rather rapid—did not put a lot of attention to it until later on, a lot of emphasis on it.

BY MR WAIDE:

Q Was anybody present other than yourself and board members, either joint board, the city board, or the—was anybody there other than board members, I guess—

A No, I don't think so.

Q When the statement was made, do you recall anybody disagreeing with that and saying it didn't make any difference if he'd sued us or not?

A No, no. I just got the feeling it was very important for me to say that I would not recommend Mr. Ray.

Q You got that feeling from who?

A Just from the way it was presented to me.

Q Why didn't you say that?

A Because I would have.

the jury on the issue of retaliation. However, our close examination of his complete testimony reveals that his answers were consistent. Stone qualified his answer by saying that he had no personal knowledge of any plan by an individual board member or the boards not to rehire Ray because of the EEOC claim "other than the quick conversation I've already related to." Having heard all of Stone's testimony, the jury exercised its prerogative to resolve any conflicts in favor of Ray's claim of retaliation.

Ray also rebuts the School District's assertion that he simply was not the best person for the job by pointing out that the persons hired included a person from out-of-state and with much less experience than he.

The School District also makes much of the fact that Stone admitted he had received complaints about Ray's handling of discipline problems. However, a review of Stone's entire testimony reveals that he stated that many times parents are dissatisfied with the actions of principals, but that the number of complaints he received about Ray was "significantly below average."

The School District claims that it contradicted Ray's rebuttal evidence of retaliation. It first points to the testimony of Dr. Bob Ferguson, the new superintendent. Dr. Ferguson testified that no one ever told him not to hire Ray. He claimed that he did not recommend Ray because he did not think he was the best person for the job. Dr. Ferguson testified that he was not even aware of the EEOC claim until after he had hired Mullins or Haggard. Several witnesses corroborated Dr. Ferguson's testimony that he was not told of the EEOC claim. The School District also points to the testimony of Dr. Bob McCord, superintendent of the Oxford, Mississippi, school district, who testified that Ray had applied for a position with his school but was not hired because McCord did not feel Ray was the best person for the job.[2]

The School District's argument that Ray did not carry his burden of proof on the retaliation claim because it contradicted all of

the rebuttal evidence lacks merit. As this court stated in *Johnson v. Chapel Hill Ind. School Dist.*, 853 F.2d 375, 381 (5th Cir.1988):

> In the face of conflicting evidence the [jury] was required to assess the credibility of defendant's witnesses. We are ill-positioned to disturb this assessment. Although the evidence is less than compelling that the Board's decision to not rehire Ms. Walton was racially motivated, it is not our role to weigh the evidence.

*See also Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1146 (5th Cir.1991) ("There were clearly two sides to this case. The jury believed [the plaintiff] and his evidence; it did not believe [the defendant].") Because the assessment of the witnesses' credibility is clearly a jury function, we reject the School District's contention that it successfully contradicted Ray's rebuttal evidence such that no reasonable jury could have found in his favor. A reasonable jury clearly was entitled to believe Ray and his evidence and to disbelieve the School District's evidence if it chose to. Clearly it did. The district court did not err in denying the School District's motion for judgment as a matter of law and motion for new trial. We will not disturb the jury's determination that the School District retaliated against Ray.

*Willfulness?*

■ The School District next challenges the district court's denial of its motion on the issue of willfulness. A violation of the ADEA is willful if "the employer either knew or showed reckless disregard for" whether its conduct was prohibited by the ADEA. *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In contrast, "[i]f an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed." *Id.* at ——, 113 S.Ct. at 1709. Although this court has previously limited willfulness to egregious conduct, *see Normand v. Research Institute of America, Inc.*,

---

**2.** The Oxford school was smaller than the Tishomingo school. The School District argues that because Ray was not considered the best person to serve as principal of the Oxford school, a *fortiori*, he would not be the best person to serve as principal of the Tishomingo school, which was larger than the Oxford school and much larger than the Iuka school.

927 F.2d 857, 864 (5th Cir.1991), the Supreme Court in *Hazen* expressly rejected such limitations. *Id.* —— U.S. at ——, 113 S.Ct. at 1703. ("[T]he employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that [retaliation] was the predominant ... factor....").

■ The School District argues that any violation of the ADEA was negligent at most, arguing that no evidence suggested that the School District knew its actions violated the ADEA. However, as Ray points out, the jury verdict in this case was based, not upon a finding of age discrimination, but upon retaliation. Ray argues that an employer who retaliates against an employee for filing an EEOC charge can do so only by acting "willfully." "Accidental" retaliation is factually impossible. Thus, Ray argues persuasively that the record supports the jury's determination of willfulness by virtue of the fact that the jury found that the Board had retaliated against Ray for his filing the EEOC charge. Ray urges that no more proof than that is required in this retaliation case. We agree. There is ample evidence in the record to support the jury's finding of retaliation; based upon this same evidence, the jury could also reasonably conclude that the School District's retaliation was willful.

Even assuming that the School District and the Board members did not in fact know that retaliation violated the ADEA, their actions in the very least constituted recklessness or "willful disregard," which would support a finding of willfulness under *Hazen.* There is no evidence in the record suggesting that the School District exercised a good faith belief that the ADEA statute permitted its retaliation against Ray for filing his EEOC claim. The district court correctly denied the School District's motion on the issue of willfulness, as the jury could reasonably infer that the School District either was aware that its actions were in violation of the

ADEA or that it was recklessly indifferent to whether it was violating the law.[3]

■ Finally, the School District challenges the jury instruction on the issue of liquidated damages related to a finding of willfulness. The School District claims that the court incorrectly suggested that the court *must* double the compensatory damages upon a finding of willfulness.

The School District argues that, under *Purcell v. Seguin State Bank and Trust Co.,* 999 F.2d 950, 951 (5th Cir.1993), the district court has discretion whether or not to award liquidated damages even upon a finding of willfulness. Ray contends that the language in *Purcell* is mere dictum because in that case the Court held that there was no evidence of willfulness. He maintains that the district court is not entitled to exercise discretion and deny liquidated damages when there has been a finding of willfulness, because the court would have no basis upon which to exercise that discretion.

> The court charged the jury as follows: You are instructed that, in addition to claiming actual damages in this case, Aubrey Ray is also seeking liquidated damages. Liquidated damages are double damages ... which *may* be awarded if you found that any discrimination against Mr. Ray was willful. I charge you that discrimination is willful when a defendant commits a discriminatory act either knowing that he is in violation of the law or in reckless indifference as to whether or not he is violating the law [emphasis added].

Normally, "the trial judge ha[s] broad discretion to compose jury instructions, as long as they are fundamentally accurate and not misleading." *Gates v. Shell Offshore, Inc.,* 881 F.2d 215, 218 (5th Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1320, 108 L.Ed.2d 495 (1990). The School District relies on *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338 (9th Cir.1987), in support of its position that it is improper to require that a jury award double damages. However, a

---

3. We point out in particular that the record establishes that many of the board members knew about the EEOC claim. Moreover, Dr. Stone testified that "[t]he filing of the charge was generally referred to in the community as suing the

school, suing us." Having been "sued" by Ray, as the board members themselves referred to the EEOC claim, the jury reasonably could have inferred that the members became sufficiently aware of the ADEA once the charge was filed.

review of this jury instruction plainly reveals that the trial judge made no suggestion that double damages *must* be awarded upon a finding of willfulness. The court plainly stated that liquidated damages *may* be awarded for willful violation of the ADEA. The instruction constituted merely a helpful explanation to the jury of the significance of their determination on willfulness and how it could impact upon damages. The court, and not the jury, actually determined the damage award. Thus, there was no way for the jury to have been misled by this entirely lucid instruction.[4]

At oral argument, the School District sought to add an additional point to its repertoire of challenges to the determinations made below on the willfulness/liquidated damages issue. The School District argued that the district court itself improperly applied the law on liquidated damages to be awarded pursuant to a finding of willfulness. During the jury instruction conference with counsel, the judge stated (out of the presence of the jury) that under the ADEA you *must* double the damages once there has been a finding of willfulness. Thus, the School District maintains that even if the instruction to the jury was clear and did not mislead the jurors, the district court itself was under the impression that he *had* to double the damages upon a finding of willfulness. As explained above, the parties have differing views of whether *Purcell* mandates an award of liquidated damages upon a finding of willfulness, or whether the district court can refuse to make such an award in the face of a willfulness determination.

We have carefully reviewed the exchange which occurred at sidebar concerning the liquidated damages issue. The district judge did make an off-hand statement during an exchange with counsel out of the presence of the jury that he had to double the damages upon a finding of willfulness. However, it is obvious from the court's charge to the jury that the district judge understood that the award of liquidated damages upon a finding of willfulness was within his discretion, and he chose to exercise that discretion. Neither party suggests that liquidated damages are not awardable under the Act upon a finding of willfulness: they merely disagree on whether, under *Purcell*, the court can *refuse* to award liquidated damages if there is a determination of willfulness.

Because the district court awarded liquidated damages, we do not have to address the question of whether the court had discretion to *refuse* such an award. Thus, we do not reach the *Purcell* issue. The Act clearly gives the district judge the authority to award liquidated damages upon a finding of willfulness. Where the jury was presented with sufficient evidence to support its findings of retaliation and willfulness, there was no error on the part of the district judge in awarding liquidated damages in accordance with the statute. Because the Act provides that liquidated damages can be awarded in an amount equal to compensatory damages, we likewise find no abuse of discretion in the district court's award of liquidated damages in this amount.

*Should Ray be reinstated?*

On appeal, Ray contends that the district court erroneously refused to reinstate him.[5] Under § 626(b) of the ADEA, a district court has jurisdiction to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of this Chapter, including without limitation judgments compelling employment, reinstatement, or promotion...." Although the preferred equitable relief is reinstatement, front pay is appropriate when reinstatement is not feasible. *Hansard*, 865 F.2d at 1469. Because the selection of remedies for an ADEA violation is in the trial court's discretion, so long as the relief granted is consistent with the

---

4. We also note in passing that it is questionable whether the School District should be deemed to have preserved its objection on the jury instruction. Counsel for the School objected to this charge only on the basis that a finding of willfulness was not supported by the record, not because the instruction was unclear or not correct under the law.

5. The district court's refusal to order reinstatement and/or to award front pay until such time that a substantially equivalent vacancy arises in the School District is the sole assignment of error Ray argues on appeal. Ray does not otherwise challenge the amount of back pay, front pay, and other actual damages awarded by the district court.

purposes of the Act, this court reviews only for abuse of that discretion. *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 822 (5th Cir. 1990).

Ray contends that the district court's decision to deny reinstatement was inconsistent with the presumption in favor of reinstatement established in *Hansard, supra.* The *Hansard* Court stated that "front pay cannot be recovered unless the plaintiff shows that reinstatement is not feasible." *Hansard,* 865 F.2d at 1469. Ray argues that reinstatement is the only way he can be made whole. He is currently living in Baldwyn and has to pay a monthly trailer note for his living accommodations there. He also continues to have to make house payments on his old home in Tishomingo County. The statute does not provide for these types of damages. Thus, the only way to put Ray back in his place would be to reinstate him so that he could move back to Tishomingo County.

Ray contends that the district court based its decision to deny reinstatement upon a finding that reinstatement would create discord and cause antagonism. Ray points out that this court has held in First Amendment retaliation cases that antagonism alone cannot bar reinstatement. *See, e.g., Bueno v. City of Donna,* 714 F.2d 484, 496 (5th Cir. 1983) ("Reinstatement is normally 'an integral part of the remedy for a discharge which contravenes the [F]irst [A]mendment, and may not be denied on the ground that reinstatement would revive old antagonisms.'" (citations omitted)). Ray urges that the rule for ADEA cases in this Circuit should be consistent with the rule for First Amendment cases. Thus, Ray urges us to follow *Bueno* and reverse the district court's denial of reinstatement because, according to Ray, the district court relied solely upon the possibility that Ray's reinstatement would cause discord and antagonism.

Ray also argues that the district court's denial of reinstatement on the basis of discord and antagonism is inconsistent with the jury's verdict. He points out that the reasons cited by the School District as to why Ray was not rehired were that he was not a good disciplinarian nor a good administrator. Those reasons were rejected by the jury,

who found that Ray was not rehired in retaliation for filing his EEOC claim. Ray submits that the district court abused its discretion in attempting to utilize the very reasons rejected by the jury to support his decision not to order reinstatement. In other words, Ray submits that the district court, in referring to the "discord and antagonism" which would result from Ray's reinstatement, was in effect denying reinstatement because it felt Ray was not a good disciplinarian. Thus, he contends that the district court's decision was inconsistent with the jury verdict.

We have carefully reviewed the district court's memorandum opinion denying reinstatement. Ray is correct in stating that the district court referred to the discord and antagonism which would result from Ray's reinstatement. However, we do not agree that the district court improperly based his decision upon reasons rejected by the jury, i.e., that Ray was not a good disciplinarian. A fair reading of the district court's well-reasoned opinion reveals that the court considered several factors in making his determination that reinstatement was not feasible. The court noted that there were no existing vacancies in the School District and that ordering reinstatement would require displacement of an existing employee. It also considered the fact that, after he was not rehired, Ray almost immediately secured substantially similar employment as a principal in the Baldwyn Separate School District in Baldwyn, Mississippi, and later in the Starkville Municipal School District in Starkville, Mississippi. These factors, relied upon by the district court in making its determination, are permissible factors in denying reinstatement. *See Deloach,* 897 F.2d at 822.

Any reference by the district court to "discord and antagonism" which would result from reinstatement seems to have been tied to the district court's observation of the problems associated with firing or relocating the existing principal and re-introducing Ray into the school as principal. We also point out that the district court made its decision against the backdrop of the consolidation of the two school districts. The testimony in the record revealed that the consolidation of the two school districts caused a good deal of

uncertainty and confusion in the school system. The trial court's ruling suggests its sensitivity to the need for predictability in the personnel decisions of the system. These sorts of concerns seem to have predominated the district court's decision to deny reinstatement, rather than an impermissible reluctance to enforce plaintiffs' rights like that contemplated in *Bueno*.[6]

Moreover, because of the consolidation, Ray's former principal position no longer exists. The School District points out that, under *Cassino, supra,* reinstatement is inappropriate when a comparable position is not available. The School District argues that there no longer exists a position comparable to Ray's old job. The school for which Ray served as principal had about 240 students; the new school has over 700 students.

Because all remedies under the ADEA are equitable and discretionary, the district court did not abuse its discretion in denying reinstatement.

## CONCLUSION

We AFFIRM the judgment of the district court.

---

**6.** Knowing that no administrative vacancy currently exists in the School District, Ray has stated that he will take the first available administrative position. However, Ray's willingness to wait for his reinstatement is not dispositive. The district court did not abuse its discretion in refusing to invoke such terms.