UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60697
_____


PEGGY WOODHOUSE,

Plaintiff-Appellee,

versus

MAGNOLIA HOSPITAL,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Mississippi
_____

August 6, 1996

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Magnolia Hospital ("Magnolia") appeals from a judgment awarding Peggy Woodhouse ("Woodhouse") damages and reinstatement on her claim of age discrimination arising from a reduction in force ("RIF").  Magnolia raises issues concerning the sufficiency of the evidence, the award of liquidated damages, the jury instructions, and the district court's order of reinstatement.  We affirm.

BACKGROUND

Woodhouse, who was fifty-three years old at the time of her discharge, had been employed by Magnolia for two separate periods totalling twenty-three years.  Woodhouse, a registered nurse,

served as Magnolia's Director of Admissions for fourteen years preceding her termination.

During 1993, Magnolia alleged that it lost approximately $1.2 million in operating revenue, and the Board of Trustees decided to eliminate sixty-one full-time positions based on the recommendation of Magnolia's administrative staff.[1] The administrative staff selected the positions to be eliminated, and the head of each department inserted the names of the employees who held that position. Woodhouse's position as Director of Admissions within the business office was chosen for elimination. Because she was the only employee occupying that position, Woodhouse was discharged on January 24, 1994.[2] In November 1994, Woodhouse applied for a clinical nursing position at Magnolia. Magnolia did not rehire Woodhouse, ostensibly because she had not been involved in clinical nursing services for fourteen years.

Woodhouse subsequently sued Magnolia under the ADEA, 29 U.S.C. §§ 621-634, alleging that Magnolia discharged her and denied her a clinical nursing position because of her age. The jury awarded Woodhouse $50,700 in back pay and $50,700 in liquidated damages. The district court further ordered that Woodhouse be reinstated to Magnolia's staff. Magnolia timely appealed.

---

[1]   Magnolia's administrator, Gary Blan, and its four vice-presidents comprised the administrative staff.

[2]   There is no dispute that Woodhouse's position has never been reactivated, and that her duties have been divided among other employees since the RIF.

2

DISCUSSION

*I. Sufficiency of the Evidence*

Magnolia initially asserts that the district court erred in denying its motion for judgment as a matter of law. Jury verdicts are tested for sufficiency under the standard articulated in Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969). See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc). A motion for judgment as a matter of law should be granted only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." Boeing, 411 F.2d at 374. A conflict in substantial evidence must exist to give rise to a jury question. Id. at 374-75.

A plaintiff may use either direct or circumstantial evidence to prove intentional discrimination. See Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is evidence that, if believed, proves the fact of intentional discrimination without inference or presumption. Id. at 328-29. Absent direct evidence, a plaintiff may prove age discrimination under the framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed.2d 668 (1973).[3]  In a RIF case, a *prima facie* case is

---

[3]  Although McDonnell Douglas is a Title VII case, we have previously held that its framework is applicable to ADEA cases. See Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 n.4 (5th Cir. 1993). The framework involves a burden-shifting analysis: (1) the plaintiff must demonstrate a *prima facie* case of discrimination; (2) the burden of production shifts to the employer to establish a legitimate and nondiscriminatory basis for the adverse employment decision; and (3) the plaintiff must then prove by a preponderance

3

established by evidence that (1) the plaintiff is within the protected age group under the ADEA; (2) he or she was adversely affected by the employer's decision; (3) he or she was qualified to assume another position at the time of the discharge or demotion; and (4) evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching its decision. Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996); Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 118 (5th Cir. 1993); Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 642 (5th Cir. 1985).

Although Magnolia argues that Woodhouse failed to make out a *prima facie* case of age discrimination, this is not the correct focus of our review. When a case has been fully tried on the merits, the adequacy of the showing at any stage of the McDonnell Douglas framework is unimportant; rather, the reviewing court must determine whether there was sufficient evidence from which a reasonable trier of fact could have concluded that age discrimination occurred. Weaver v. Amoco Prod. Co., 66 F.3d 85, 87 (5th Cir. 1995); Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 149 (5th Cir. 1995), cert. denied, _ U.S. _, 116 S. Ct. 709, 133 L. Ed.2d 664 (1996). To make this determination, we must examine the sufficiency of both the direct and circumstantial evidence to support the jury verdict that the employer used age as a

of the evidence that the employer's proffered reason is pretext. McDonnell Douglas, 411 U.S. at 802-04, 93 S. Ct. at 1824-25; Portis, 34 F.3d at 328 n.7.

determinative factor in making the adverse employment decision. See Rhodes, 75 F.3d at 993-94. Although age need not be the sole reason for the adverse employment decision, it must actually play a role in the employer's decisionmaking process and have a determinative influence on the outcome. Id. at 994 (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed.2d 338 (1993)).

There is no dispute that Woodhouse was discharged as a result of a RIF. The parties, however, disagree about the necessity of the RIF and the motive for Woodhouse's discharge. Although several witnesses testified that the $1.2 million loss was a significant financial setback for the hospital, a former assistant administrator called by Woodhouse, Robert Barrett, testified that revenue was higher in 1993 than in 1992. Barrett admitted, however, that the $1.2 million loss was quite substantial. Furthermore, Woodhouse also presented evidence that the hospital subsequently rehired more employees than it had laid off: at the time of the RIF, Magnolia had approximately 705 employees, while at the time of trial, the hospital employed 741 individuals. Two witnesses, who had also been discharged, testified that Magnolia called them back to work within two days of the RIF.

Although a reasonable jury could conclude that the RIF was a ruse to terminate old or unwanted employees, it was not essential that the jury make such a determination in order for it to conclude that Magnolia discriminated against Woodhouse on the basis of her age. "[T]he ADEA does not require that an employer prove that it is in fact losing money before it can take a nondiscriminatory and

5

legitimate course of action to make more." Armendariz, 58 F.3d at 152. And it is clear that the employer's adverse financial condition will render the discharge not inherently suspect. Thornbrough, 760 F.2d at 642.

> Instead, what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones. If we focus not on why employees, in general, were discharged . . . but instead on why the plaintiff rather than another employee was discharged, the discharge of an older employee rather than a younger one is initially unexplained. Under these circumstances, requiring the employer to articulate reasons for his decision to fire the plaintiff is appropriate.

Id. Thus, the crucial inquiry involves Magnolia's proffered reasons why Woodhouse was chosen for termination and why it refused to rehire her as a clinical nurse.

In the instant cause, Woodhouse presented evidence that Dr. Tommy Alexander, Chairman of Magnolia's Board of Trustees and a practicing gynecologist, and Vicky Franks, an employee in the business office who was also terminated, discussed the impending terminations two weeks before the RIF. According to Franks, Alexander advised her that Magnolia was planning to lay off the "older employees." Eight months later, Franks called Alexander and surreptitiously taped a subsequent conversation. The tape contained the following admission:

> FRANKS: You know back in January when I came in for my pap smear . . . . [A]nd I told you I thought I was having stress headaches from being worried about being laid off, and you said, don't worry about being laid off, you're not gonna get laid off. They're gonna lay off those old people and the people that needed done beenSQ

> ALEXANDER: That's what they told me.

At trial, Alexander testified that he did not remember making the

6

statement and that no one ever told him Magnolia was planning to discharge older employees.

Despite Alexander's contention that he did not remember making the statement, the jury was entitled to believe that Alexander told Franks that the hospital intended to discharge older employees through the RIF.  See Ray v. Iuka Special Mun. Separate Sch. Dist., 51 F.3d 1246, 1251 (5th Cir. 1995) (noting that assessment of the credibility of witnesses is a jury function); Boeing, 411 F.3d at 375 ("[I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of the witnesses.").

Magnolia asserts that Alexander's statement is insufficient to raise a jury issue on age discrimination because it was merely a stray remark.  See Armendariz, 58 F.3d at 153 (concluding that remarks that are vague or remote in time will not support an age discrimination claim).  In contrast to the various cases cited by Magnolia, Alexander's statement was neither remote in time nor vague.  He admitted on tape that he told Franks in January that "[t]hey're gonna lay off those old people."  The RIF occurred on January 24, 1994.  The remark was more direct than any of the comments in the cases Magnolia cites[4]—it specifically indicated

----

[4]    See Waggoner v. City of Garland, Tex., 987 F.2d 1160, 1166 (5th Cir. 1993) (statement that a younger person could do faster work and reference to plaintiff as an "old fart" insufficient to establish age discrimination); Turner v. North Am. Rubber, Inc., 979 F.2d 55, 59 (5th Cir. 1992) (comment that plaintiff was being sent "three young tigers" to assist with operations was insufficient to show discrimination because the comments were vague and too remote in time); Guthrie v. Tifco Indus., 941 F.2d 374, 378-79 (5th Cir. 1991), cert. denied, 503 U.S. 908, 112 S. Ct. 1267, 117 L. Ed.2d 495 (1992) (outgoing president's comment that

7

that Magnolia intended to use age as a factor in its decision of which positions to eliminate. We refuse to hold that this statement is insufficient to raise a jury issue on age discrimination.

Magnolia argues that Alexander was not involved in the decision concerning which positions would be eliminated because the Board had delegated that responsibility to the administrative staff. See Nichols, 81 F.3d at 40-41 (concluding that allegedly discriminatory remarks are not probative unless they are made by the relevant decisionmaker). Although Magnolia asserts that Alexander had no role in the decision, the evidence indicates that the Board developed the parameters of the RIF, and the administrative staff then made the final policy concerning which positions would be eliminated. Prior to implementing the RIF, a final report was made to the Board which outlined the positions to be eliminated and the employees to be discharged. Thus, Alexander was involved in the RIF decision, even though he was not involved in the specific determination of who would be discharged.

Magnolia further points to the fact that the "they" alluded to in Alexander's statement, "that's what they told me," were never identified. The inability to identify these individuals does not compel the conclusion that the jury could assign no probative weight to the statement. See Ray, 51 F.3d at 1250 & n.1 (witness

---

the new president "need[ed] to surround himself with people his age" insufficient to establish age discrimination); Elliot v. Group Medical & Surgical Serv., 714 F.2d 556, 565 (5th Cir. 1983), cert. denied, 467 U.S. 1215, 104 S. Ct. 2658, 81 L. Ed.2d 364 (1984) (employer's statement that he wanted "new blood" and a "lean and mean team" did not show age discrimination).

testified that an unidentified school board member made the comment that the board would not rehire the plaintiff because he had filed an EEOC claim against the district). The jury could reasonably infer that "they" referred to the administrative staff, which was accountable to the Board and to whom the Board had delegated the responsibility for determining the positions to be eliminated, given that all evidence indicated that they were the persons directly involved in the elimination decision. See Boeing, 411 F.2d at 374 (court should consider the evidence and all reasonable inferences that may be drawn from it).

Magnolia does not argue that Alexander's statement was inadmissible; rather, it merely asserts various reasons why the statement should be discounted or discredited. These arguments are more suitably made to the jury because it is charged with weighing the evidence. Id. at 375. The jury was presented conflicting evidence on this issue; the jury apparently chose to believe that Alexander made the statement and that Magnolia intended to use age as one criteria in its discharge decision. We conclude that the jury could properly consider the statement as evidence that Magnolia intentionally discriminated against Woodhouse because of her age.

Evidence was also presented that Magnolia developed a new policy for the RIF, rather than rely on the policy outlined in its employee handbook. Benny Brewster, one of the administrators involved in the elimination decision, conceded that the list of job titles could be manipulated to allow Magnolia to discharge any employee simply by eliminating his or her position; he denied,

9

however, that the administrative staff engaged in such manipulation in order to terminate old or unwanted employees. Despite Magnolia's assertion that the evidence established that the new policy envisioned that the elimination decision would be made solely by the administrators without consulting the department heads, Brewster testified by deposition that the administrators reviewed the elimination decision with each department head to "insure that what we were presenting to them was, I guess, the best way to do it, or these particular jobs going to be eliminated. If they agreed to it, they assigned the people to that position."[5] He also admitted that the department heads would be more aware than the administrators of whether a position was necessary to the hospital.

Contrary to Brewster's deposition testimony, Jerry Knighton, Woodhouse's department head, testified that he was never consulted about the decision to eliminate her position as Director of Nursing. Knighton stated that Woodhouse's position was necessary, and that if he had been consulted he would have advised the administrators not to eliminate her position. Interestingly, Magnolia was unable to clearly identify either the person who made the decision to eliminate Woodhouse's position or the process by which Woodhouse's position was chosen for elimination.

---

[5] At trial, Brewster testified that the administrators decided what positions would be eliminated and that he had been mistaken in stating during the deposition that the department heads were consulted. The jury, of course, was not required to believe that Brewster was mistaken when he testified that the policy envisioned that the department heads would be consulted before the final termination decisions were made.

Woodhouse also points to evidence that she was not rehired as a clinical nurse after her termination even though Magnolia had hired seventy-six nurses by the time of the trial. Magnolia presented evidence at trial that it refused to employ Woodhouse because she had not been a clinical nurse for fourteen years and had taken no refresher courses in the interim. No one at Magnolia ever informed Woodhouse that she needed to take a refresher course if she wanted employment as a clinical nurse. According to Magnolia's witness, Linda Whitenton, the Director of Nursing Services, Woodhouse was not qualified to serve as a clinical nurse because she lacked recent experience. Whitenton testified that the Mississippi Board of Nursing required that Woodhouse take a refresher course in clinical nursing. When asked where this requirement was found in the state statutes, Whitenton stated that it was found in a nursing newsletter.

In rebuttal, Woodhouse testified that the refresher course requirement only pertained to nurses who did not have a current license. At the time Woodhouse applied for a nursing position, she had a valid license. A recent graduate of a nursing school testified that she had never heard of the refresher requirement and had been taught that a nurse would be able to practice "as long as you kept up your license and had hours in either supervisory positions or position as a floor nurse." Alexander, Brewster, and at least one nurse also testified that they knew of no reason why Woodhouse could not be hired as a clinical nurse. See Thornbrough, 760 F.2d at 642 (plaintiff can show discrimination in a RIF case by establishing, *inter alia*, that she was qualified to assume another

11

position at the time of discharge). Woodhouse also presented evidence that none of the nurses hired were her age or older. Thus, conflicting evidence was introduced on the issue of whether the refusal to rehire Woodhouse was based on her qualifications. The jury was thus entitled to find that the refresher requirement was a pretext for discrimination. See Rhodes, 75 F.3d at 994 (noting that "[i]n tandem with a prima facie case, the evidence allowing rejection of the employer's proffered reasons will often, perhaps usually, permit a finding of discrimination without additional evidence").

The evidence was hotly disputed in this case. Woodhouse presented much more than a scintilla of evidence to support her age discrimination claim. In this instance, the case was properly submitted to the jury, which weighed the evidence and found against Magnolia. After reviewing the evidence under the standard articulated in Boeing, 411 F.2d at 374-75, we conclude that the district court properly denied Magnolia's motion for judgment as a matter of law.[6]

## II. Liquidated Damages

Magnolia contends that the evidence was insufficient to

_____

[6] Magnolia argues that even if the motion for judgment as a matter of law was properly denied, the verdict is so against the great weight of the evidence that a new trial must be granted. See Shows v. Jamison Bedding, Inc., 671 F.2d 927, 930-31 (5th Cir. 1982). A district court's denial of a motion for new trial is reviewed only for an abuse of discretion. Id. at 930. Examining the propriety of the denial under the three factors outlined in Shows, it is clear that the district court did not abuse its discretion. The issues here were relatively simple, the evidence was disputed, and there were no pernicious or undesirable occurrences at trial. See id. at 930-31. We conclude that the district court correctly denied the motion for new trial.

support the jury's determination that Magnolia willfully violated the ADEA. The ADEA permits the award of liquidated damages only in cases where a willful violation has occurred. See 29 U.S.C. § 626(b). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128, 105 S. Ct. 613, 625, 83 L. Ed.2d 523 (1985); see Powell v. Rockwell Int'l Corp., 788 F.2d 279, 285 (5th Cir. 1986). Recognizing that because "employers are required to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability," the Supreme Court rejected the contention that mere awareness of the ADEA made a violation willful. Trans World, 469 U.S. at 128, 105 S. Ct. at 625.

The Supreme Court has recently clarified when liquidated damages are not recoverable:

> It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA. The ADEA is not an unqualified prohibition on the use of age in employment decisions, but affords the employer a "bona fide occupational qualification" defense . . . and exempts certain subject matters and persons . . . . If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed.

Hazen Paper Co. v. Biggins, 507 U.S. 604, 616, 113 S. Ct. 1701, 1709, 123 L. Ed.2d 338 (1993). Contrary to Magnolia's contention that aggravating factors are necessary to recover liquidated damages, the Supreme Court apparently does not require the presence of such factors. Rather, liquidated damages are not recoverable

13

only if there is evidence that the intentional violation of the ADEA was based on the employer's good-faith, albeit mistaken, belief that the statute allowed an age-based decision. See Trans World, 469 U.S. at 129-30, 105 S. Ct. at 625-26 (holding employer not liable for liquidated damages because it reasonably and in good faith attempted to determine whether its policy would violate the ADEA).

In the instant cause, Alexander admitted that he had been informed that age would be used as one factor in determining which positions would be eliminated. Alexander's admission is some evidence that Magnolia acted in willful violation of the ADEA. See Weaver, 66 F.3d at 88 (taped conversation wherein supervisor agreed with plaintiff's comment that "a guy who is my age doesn't have much future left" sufficient to support the jury's determination that the employer willfully violated the ADEA). Woodhouse also introduced evidence concerning how Magnolia's RIF policy could be manipulated so that positions held by older employees could be selected for elimination. Finally, the jury had evidence before it that the procedure to be used in the RIF was not followed in the decision to discharge Woodhouse.

Based on the forgoing evidence, a jury could conclude that Magnolia acted willfully in terminating Woodhouse. Magnolia offered no evidence that it reasonably believed in good faith that the ADEA permitted an age-based decision on the selection of positions for elimination. Hazen, 507 U.S. at 616, 113 S. Ct. at 1709; Trans World, 469 U.S. at 129, 105 S. Ct. at 625. The district court did not err in awarding Woodhouse liquidated

14

damages.

*III. Jury Instruction*

Magnolia asserts that the district court erroneously refused its requested instruction on the issue of the burden Woodhouse must satisfy to prevail on her discrimination claim. Magnolia's proffered instruction informed the jury that Woodhouse had to prove three elements in order to succeed on her claim of age discrimination.[7] The district court denied the instruction, and presented the issue to the jury as: "Do you find that plaintiff has proven by a preponderance of the evidence that age was a determining factor in the decision of defendant to terminate her?"

A district court is accorded considerable latitude in fashioning jury instructions, and will be reversed only when the charge, as a whole, leaves the reviewing court with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Horton v. Buhrke, a Div. of Klein Tools, Inc., 926 F.2d 456, 460 (5th Cir. 1991). We have previously held that in age discrimination cases, "the court should instruct the jury to consider the ultimate question of whether defendant terminated plaintiff because of his age," and that it is improper to instruct the jury on the elements of the *prima facie* case. Walther v. Lone Star Gas Co., 952 F.2d 119, 127 (5th Cir. 1992). The crucial issue

---

[7] The instruction stated that Woodhouse must prove by a preponderance of the evidence that (1) the reason given for her dischargeSQ*i.e.*, the elimination of her job as part of a substantial reduction in force because of financial problemsSQwas false; (2) Woodhouse's age was the real reason for her discharge; and (3) her job in its various parts continued in existence after her termination.

15

in an ADEA case involves whether the employer used age as a determinative factor in making the employment decision. Rhodes, 75 F.3d at 993-94. Because the district court instructed the jury that Magnolia could be held liable only if age was a determining factor in its termination decision, it correctly stated the law in this Circuit. We find no error in the district court's denial of Magnolia's proffered instruction.

*IV. Reinstatement*

Magnolia contends that the court erred in ordering Woodhouse's reinstatement because her position as Director of Admissions has been permanently eliminated and she is not qualified to serve as a clinical nurse. A district court's decision whether to reinstate or award front pay is reviewed only for an abuse of discretion. Weaver, 66 F.3d at 88. Although reinstatement is the preferred remedy for a discriminatory discharge, front pay may be awarded if reinstatement is not feasible. Deloach v. Delchamps, Inc., 897 F.2d 815, 822 (5th Cir. 1990).

Magnolia correctly asserts that Woodhouse cannot be reinstated to her former position because it no longer exists. See Ray, 51 F.3d at 1255 (concluding that front pay was appropriate where plaintiff's former position no longer existed). Although Magnolia contends that Woodhouse is unqualified to fill an available clinical nursing position, the district court found against Magnolia on this point:

> Although, the plaintiff's previous position has technically been eliminated, the evidence at trial clearly indicated that she was qualified to maintain a variety of jobs with the defendant, *most notable as a registered nurse.*

16

Order at 2 (emphasis added). Magnolia has presented no other evidence that rehiring Woodhouse as a clinical nurse would be infeasible. See Deloach, 897 F.2d at 822 (determining that reinstatement was not feasible where it would cause morale problems and disrupt other individuals' employment); Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1346 (9th Cir. 1987), cert. denied, 484 U.S. 1047, 108 S. Ct. 785, 98 L. Ed.2d 870 (1988) (noting that reinstatement is not feasible where a hostile relationship exists or where there is no position available).

Woodhouse specifically requested that she be reinstated to a clinical nursing position. At the time of trial, Magnolia had eleven such positions vacant. Moreover, the district court indicated that the parties were not precluded from negotiating an award of front pay instead of reinstatement. Given this Court's recognition of reinstatement as the preferred remedy, we conclude that the district court did not abuse its discretion in ordering Woodhouse's reinstatement.

CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.