**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1041n.06

**No. 11-3655**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Sep 28, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CHARLOTTE BECK, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | ON APPEAL FROM THE UNITED |
| v. ) | STATES DISTRICT COURT FOR THE |
| ) | NORTHERN DISTRICT OF OHIO |
| BUCKEYE PIPELINE SERVICES CO., ) | |
| ) | |
| Defendant-Appellee. ) | |

Before:  CLAY and SUTTON, Circuit Judges; RICE, District Judge.[*]

SUTTON, Circuit Judge.  Charlotte Beck sued her employer, Buckeye Pipeline Services Co., alleging that the company discriminated against her based on gender and age when it discharged her as part of a company-wide reduction in force.  The district court granted summary judgment to Buckeye.  We affirm.

I.

In spring 2009, Buckeye assembled ten company leaders as part of a "design team" to reform the company's organizational structure.  R. 28-4 at 2 (Page ID #158).  The new structure focused on decentralized, team-based leadership rather than centralized, top-down control, *id*. at 2–4 (Page ID

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

#158–60), and promoted "accountability, flexibility, adaptability, [and] teamwork" among employees. *Id*. at 3–4 (Page ID #159–60).

After revamping the company's organization, the design team created a new system for evaluating employees. *Id*. at 3–4. The team assigned each employee two ratings: an "A" rating that assessed the employee's "[s]kill [p]otential," and a "B" rating that assessed the employee's "[a]bility to [w]ork [i]n and [p]romote [t]he [n]ew [c]ulture," which included things like whether the employee was "[a] good listener and communicator," "willing to work in a team," "proactive and accountable," and able to "make good judgments about priorities without close supervision." R.28-2 at 8–9 (Page ID #151–52). The team required at least two people with knowledge of the employee to present their views and to "cite specific examples of behaviors that supported a proposed grade." R.28-4 at 4 (Page ID #160). An employee could earn a score ranging from zero to four for each rating with four being the highest. *Id*. The matrix combined the scores by multiplying the A score by ten points and the B score by fifteen points and adding the two values together, creating one hundred potential points. *Id*. at 9 (Page ID #152). The team decided that the company would not retain any employee who received fewer than sixty points. *Id*.

In late June and early July 2009, the design team split into smaller groups to conduct the employee evaluations. R.28-3 at 2–3 (Page ID #155–56); R.28-21 at 88–89 (Page ID #1129–39). Five people—Carl Ostach, Rick Bishop, Roger Hatch, Mark Johnson and Bill Serra—evaluated the employees who worked at Buckeye's Lima, Ohio locations, R.28-21 at 83 (Page ID #1124), which included Beck, a twelve-hour operator at Buckeye's Lima Station. *Id*. at 6 (Page ID #162); R.28-12

at 49 (Page ID #605). At that time, Beck, fifty years old, had worked at Buckeye for over sixteen years. R.28-13 at 17 (Page ID #760); R.28-14 at 2 (Page ID #764); R.28-4 at 6 (Page ID #162). She was the only woman among the eight twelve-hour operators at Lima Station. R.29-1 at 127 (Page ID #1317); R.28-21 at 33–34 (Page ID #1074–75).

Three members of the five-person group—Ostach, Bishop and Johnson—provided information about Beck's performance. R.28-21 at 100, 106, 110 (Page ID #1141, 1147, 1151). Ostach described Beck as someone who "complained about the way things were scheduled, [and] complained about directions that the controllers were giving in Lima," and who resisted the implementation of new safety programs. R.28-21 at 100–05 (Page ID #1141–46). Bishop said that Beck "was not much of a team-player" because she frequently refused to fill in for other operators, and she had twice failed to address problems inherited from other operators, which had to be corrected after her shift. R.28-6 at 5–6 (Page ID #175–76). Johnson said Beck "was not particularly cooperative with the Control Center, and . . . was slow to respond to its requests." R.28-3 at 3 (Page ID #155). He also said that, "[r]ather than working with the Control Center to find solutions to problems, Ms. Beck tended to state that the problem was not her responsibility," which Johnson thought meant Beck "likely would not thrive in the new environment, which placed a particularly high value on teamwork." *Id*. Based on this information, the five-person group gave Beck an A score of two and a B score of one, which added up to thirty-five points. R.28-2 at 5 (Page ID #148). Because Beck's score fell well below the sixty-point threshold for remaining at Buckeye, the

company fired her (and 139 other employees) on June 20, 2009. R.28-4 at 6 (Page ID #162). A younger, male employee with less experience was assigned to Beck's position as a 12-hour operator.

Beck sued Buckeye, alleging gender and age discrimination under Ohio law. Ohio Rev. Code §§ 4112.02, 4112.99. The district court granted summary judgment to Buckeye.

II.

Ohio courts apply the federal burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to discrimination claims filed under Ohio law. *Helmick v. Cincinnati Word Processing, Inc.*, 543 N.E.2d 1212, 1215 n.2 (Ohio 1989). For purposes of reviewing the district court's summary judgment ruling, the parties agree that Beck has made a prima facie case and that Buckeye has offered a legitimate, non-discriminatory reason for firing Beck: the company-wide reduction in force. Appellant Br. at 13; Appellee Br. at 18. That puts the burden on Beck to show that Buckeye's proffered rationale for firing her was a pretext for discrimination, *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009), a not inconsiderable burden given that in reduction-in-force cases "the most common legitimate reasons for the discharge are the work force reductions" themselves. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *see also Southworth v. N. Trust Sec. Inc.*, 960 N.E.2d 473, 480 (Ohio Ct. App. 2011) ("[I]n a [reduction in force], qualified employees are going to be discharged."). Acknowledging that a reduction in force would be a legitimate reason to discharge her, she claims nonetheless that "numerous

circumstances tend to show that [her] termination was motivated by age and/or gender discrimination." Appellant Br. at 20. We disagree.

Beck submits that the design team's reliance on "subjective criteria" in selecting her for termination permits the inference that she was "singl[ed] out" because of her age and gender. Appellant Br. at 13. Subjective criteria, it is true, sometimes make it difficult to distinguish between lawful and unlawful employment actions, and they deserve "careful[] scrutin[y]." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982). But "flexibility in determining individual components of a matrix score does not indicate discrimination." *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir. 2009) (quoting *Brown v. EG&G Mound Applied Tech., Inc.*, 117 F. Supp. 2d 671, 680 (S.D. Ohio 2000)). The question "is whether the subjective criteria were used to disguise discriminatory action." *Grano v. Dep't of Dev. of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983).

Beyond her general concern about subjective criteria, Beck does not challenge as discriminatory any of the specific criteria the design team used to evaluate her: whether an employee was "a good listener and communicator[,] . . . willing to work in a team[,] . . . accepts accountability[,] . . . [and] works with speed, energy and efficiency." R.28-2 at 9 (Page ID #152). Nor could she. None of these criteria discriminates based on gender or age.

Beck instead argues that application of these criteria to her was a pretext for discrimination because the design team's evaluation conflicted with the assessment of her immediate supervisor,

Kevin Dansby. Dansby was not a member of the design team, but Bishop solicited his opinion about the employees he supervised. Dansby, it is true, said Beck was a good employee. But he said the same thing about *all* of his charges. He "told [Bishop] . . . everybody on the list that I thought were good performers." R.31 at 105 (Page ID #1524). And when "asked if [he] had to phase out some employees, who would [he] phase out[,] . . . [he] said none of them," because "they were all good performers and . . . [he] wouldn't phase out any employee." *Id.* at 105–06 (Page ID #1524–25). "You're not being of much help here," Bishop eventually responded. *Id.* at 108–10 (Page ID #1527–29).

Dansby's unwillingness to criticize any of his employees in connection with a reduction in force does not cast doubt on the veracity of the experiences that Ostach, Bishop and Johnson described when evaluating Beck. Despite her argument to the contrary, all three had personally worked with Beck. R.28-2 at 4–5 (Page ID #147–148); R.28-6 at 2 (Page ID #172); R.28-3 at 3 (Page ID #155); *cf.* R.28-12 at 53 (Page ID #609). They said she complained often, resisted direction, responded slowly, was uncooperative and was not a team player. R.28-21 at 100–11 (Page ID #1141–1152); R.28-2 at 4–6 (Page ID #147–49); R.28-3 at 3 (Page ID #155); R.28-6 at 5–6 (Page ID #175–76). *See Idemudia v. Chase*, 434 F. App'x 495, 505 (6th Cir. 2011) (citing specific examples to support employer's subjective evaluation). Dansby disagreed with these assessments *at his deposition* but never shared his contrary thoughts with Bishop before the team evaluated Beck. R.31 at 105–10, 127–28 (Page ID #1524–29, 1546–47). Dansby's satisfaction with Beck's work under the old system at any rate does not prove she would succeed under the new system. *See Peters*

*v. Lincoln Elec. Co.*, 285 F.3d 456, 474 (6th Cir. 2002). The design team, and only the design team, was asked to decide what qualities to require of employees in Buckeye's new management system.

Beck has one other objection to the team's evaluation. She says the team knew Bishop had spoken to Dansby and expected Bishop's evaluation comments to reflect Dansby's opinion. By sharing an opinion that conflicted with Dansby's, she says Bishop violated the team's policies for conducting evaluations. Not true. The team understood Bishop would speak to Dansby, but did not expect him to be merely a conduit for Dansby's opinion: in Ostach's words, Bishop "would give his input based *on what his knowledge was of the employee* . . . as well as what the area supervisor's[, Dansby's], input was." R.28-21 at 84 (Page ID #1125) (emphasis added). The fact that Bishop communicated a somewhat negative review to the team does not show, as Beck argues, that he provided "false information . . . by claim[ing] that Dansby [said] Beck [w]as a complainer and not a team player." Appellant Br. at 22. There is no evidence in the record to support a finding that Bishop told the team that Dansby believed that Beck was a complainer and not a team player. Bishop said Dansby "tended to be a high grader and was reluctant to provide critical comments about the employees under his supervision. At the same time, [he] was not able to refute the specific examples of behaviors that I cited to him." R.28-6 at 5 (Page ID #175). As a result, in presenting his own evaluation, Bishop was entitled to disregard Dansby's opinion, which "did not have much influence in the scoring recommendations" Bishop made to the team. *Id.* Beck, to say nothing of every other employee under Dansby's supervision, may wish that Bishop had adopted Dansby's opinion of her, but she cannot complain that he misrepresented it.

When all is said and done, the use of subjective evaluation criteria does not by itself show discrimination, particularly in a reduction in force case. The dissent's thoughtful conclusion to the contrary relies primarily on the theory that the reduction in force did not actually motivate Beck's discharge. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). To prevail under this theory, Beck "must show that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not" that Buckeye terminated her based on a pretext. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 503 (6th Cir. 2007) (quotations omitted). But Beck has no evidence that Buckeye terminated women or older workers at a disproportionately high rate during the reduction in force; that Buckeye deviated from its normal use of subjective evaluation procedures; or that Bishop lied about Dansby's comments. In the absence of any such evidence, the mere fact that Buckeye used subjective criteria cannot by itself establish pretext. *Browning*, 436 F.3d at 697.

III.

For these reasons, we affirm.

**CLAY, Circuit Judge, dissenting.** The majority mischaracterizes the dissent's argument as well as the appropriate legal standard to be employed under the circumstances of this case. The issue is not simply whether the use of subjective criteria, in and of itself, demonstrates discrimination in a reduction-in-force case. Rather, the issue is whether there is enough evidence, circumstantial or otherwise, to suggest that discrimination was at least one of the factors motivating Plaintiff's termination, under circumstances where discrimination could be masked under the cloak of subjectivity. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008); *see Griffin v. Finkbeiner*, 689 F.3d 584, 594 n.7 (6th Cir. 2012) (noting that "single-motive and mixed-motive theories are not distinct claims, but rather different ways of analyzing the same claim" and the decision about which theory the case involves "may not always occur before the summary-judgment stage"). *See also Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 461 (6th Cir. 2004) ("[S]ubjective reasons provide ready mechanisms for discrimination." (internal quotation marks omitted)).

Plaintiff Charlotte Beck, who was over fifty years old and the only female twelve-hour operator at Defendant's Lima plant, was terminated after sixteen years of well-reviewed, discipline-free performance. To justify Plaintiff's termination, Defendant used a system heavily reliant on subjective criteria. Defendant then applied its system to Plaintiff in a manner inconsistent with its own established procedures. Furthermore, the record demonstrates that Defendant solicited the input of Plaintiff's direct supervisor, then ignored his input when it failed to comport with the negative reviews of Plaintiff produced by Defendant's Design Team. Under these circumstances, sufficient

evidence that Defendant's decision was pretextual renders this case inappropriate for disposition at summary judgment. For these reasons, I respectfully dissent.

In absence of direct evidence of discrimination, the plaintiff must first make out a *prima facie* case for discrimination by showing that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was replaced by someone outside of the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Helmick v. Cincinnati Word Processing, Inc.*, 543 N.E.2d 1212, 1215 n.2 (Ohio 1989) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to discrimination claims filed under Ohio law). Because Plaintiff's termination arose as part of a work force reduction, "this [C]ourt has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger*, 579 F.3d at 623 (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *see also Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 785–86 (6th Cir. 2007). After the plaintiff has made out a *prima facie* case of discrimination, the employer must present a legitimate, non-discriminatory reason for the termination. *Geiger*, 579 F.3d at 626. The burden of production then shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was pretext. *Id*.

Defendant in the instant case concedes that Plaintiff made out her *prima facie* case, and the parties agree that the reduction in force satisfies Defendant's burden of production. *See Beck v. Buckeye Pipe Line Servs. Co.*, No. 3:10-cv-319, 2011 WL 2076487, at *3 (N.D. Ohio May 25, 2011).

Accordingly, the sole issue for our review is whether Plaintiff has met her burden of production as to pretext. The majority concludes that Plaintiff failed to satisfy this burden. In so holding, the majority confuses Plaintiff's burden of production with a burden of persuasion, and imposes a "pretext-plus" standard firmly rejected by the Supreme Court and this Court's precedents.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, the Supreme Court established that judgment as a matter of law for a defendant in an employment discrimination case may be appropriate under certain circumstances even if the plaintiff satisfies her burdens to show a *prima facie* case and pretext. 530 U.S. 133, 148 (2000). Of course, depending on the circumstances, a *prima facie* case and a showing of pretext can also support judgment for the plaintiff. *Id*. at 147–48. Accordingly, "because a *prima facie* case and sufficient evidence to reject the employer's explanation may permit a finding of liability," a court "err[s] in proceeding from the premise that [the] plaintiff must always introduce additional, independent evidence of discrimination." *Id*. at 149. Rather, whether judgment is appropriate remains a heavily-context driven inquiry that "depends on a number of factors . . . [including] the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id*. at 148–49.

In *Blair v. Henry Filters, Inc.*, we extended the rationale of *Reeves* to the summary judgment stage and concluded that "to survive summary judgment a plaintiff need only produce enough evidence to support a *prima facie case* and to rebut, but not to disprove, the defendant's proffered rationale." 505 F.3d 517, 532 (6th Cir. 2007). Accordingly, we held that a plaintiff "d[oes] not need

to produce additional evidence to support a finding of pretext; the evidence that [she] produced in support of [her] *prima facie* case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext." *Id.*

A plaintiff can demonstrate pretext by one of the following three showings: "that the employer's stated reason for the adverse employment action (1) ha[d] no basis in fact; or (2) was not the actual reason; or (3) was insufficient to explain the employer's action." *White*, 533 F.3d at 393. The first category implicates evidence "that the proffered bases for the plaintiff's discharge never happened," while the second category requires that the plaintiff "admit[] the factual basis underlying the employer's proffered explanation and further admit[] that such conduct could motivate dismissal." *Manzer v. Diamond Shamrock Chems., Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not subjected to the same adverse employment decision even though they engaged in substantially identical conduct to that which allegedly motivated the plaintiff's termination. *Id.*

In the instant case, Plaintiff proceeded primarily down the second of these paths. She has not disputed that Defendant was experiencing a company-wide reduction in force at the time of her termination. However, she questions whether the reduction was the real basis for her dismissal, given that Defendant never produced a satisfactory explanation for why Plaintiff was selected for termination instead of one of her younger, male colleagues. In contesting Defendant's explanation—that Plaintiff was terminated because she received low assessment scores from the

Design Team—Plaintiff raises several compelling challenges to her evaluation. These challenges create at least a material issue of fact about whether "an illegal motivation was *more* likely than [the reason] offered by [Defendant]." *Id*.

First, Plaintiff points out that the Ohio courts find it "suspicious" when an employer chooses "to fire a qualified, older employee [while] retain[ing] younger ones" in a reduction in force. *Hoffman v. CHSHO, Inc.*, No. CA2004-09-072, 2005 WL 1799307, at *4 (Ohio Ct. App. Aug. 1, 2005) (citing *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 253 (5th Cir. 1996)). Under these circumstances, the Ohio courts require the Defendant "to articulate reasons for singling out an employee who is within the statutorily-protected class for termination, while retaining [an] employee who is outside that class." *Id*. Defendant has not met this standard.

As a starting point, it bears mentioning that Defendant has never contended that Plaintiff's termination was justified because she was either lacking, or fell appreciably behind her colleagues, in terms of her objective skills or qualifications. This, together with the other probative evidence of discrimination in the case, should establish a triable issue as to pretext. Under our precedents, when a plaintiff demonstrates that she is "as qualified as if not better qualified than [her retained colleagues]," summary judgment is inappropriate. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (internal citations omitted).

Significantly, this conclusion is only bolstered by the fact that Defendant has all but admitted that the decision to terminate Plaintiff was based entirely on subjective criteria. The Design Team's

evaluation process contained two components: an objective qualification component (worth roughly forty percent of the employee's score), and a subjective component (worth the remaining sixty percent). *Beck*, 2011 WL 2076487, at *1–2. The objective portion, known as the "A" score, measured the employee's "technical ability or the physical ability to perform a particular task;" whereas the "B" score represented whether the employee would "fit in" with Defendant's "new culture," as judged by "being accountable for [one's] actions, taking initiative, being a team player, [and] having an entrepreneurial outlook." *Id.* Defendant conceded at oral argument that Plaintiff's "A" score was within the range of the employees who were retained by the company. However, Defendant provided no explanation for why it valued its subjective component over the objective component, or why it chose this substantially subjective approach over alternatives that would be less open to criticism. Rather, it is apparent from the record that Defendant deliberately used a system which did not emphasize objective factors, such as education or training credentials, seniority in the company, or simple technical skills. Any of these factors, or a simple recalibration of the "A" and "B" scores might have removed or reduced subjectivity in the selection process.

This Court has repeatedly emphasized that decisions made on the basis of subjective criteria, such as whether an employee is a team player or whether she would fit into a new corporate culture, can "provide a ready mechanism for discrimination," and thus should be "carefully scrutinized." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982); *see also Hedrick*, 355 F.3d at 461 (6th Cir. 2004). Although being a "team player" may have been an important consideration for Defendant in carrying out its reduction in force, it should not

be treated as an absolute defense to what may amount to unlawful discrimination. *Idemudia v. Chase*, 434 F. App'x 495, 504–505 (6th Cir. 2011) (citing *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003)). Additionally, the majority has far too quickly dismissed the inconsistencies committed by the Design Team in performing Plaintiff's assessment. Plaintiff has provided credible evidence from which to infer that she did not receive a review by the required number of individuals, that the individuals who reviewed her were not sufficiently familiar with her work performance, and—most damning of all—that the Design Team solicited, and then deliberately disregarded, a favorable review of Plaintiff's performance by her direct supervisor when they found they had insufficient information to complete Plaintiff's review under the Design Team process. The majority's abrupt discharge of this last piece of evidence is particularly problematic, because it ignores the legitimate possibility that Plaintiff's supervisor—who was a supervisor over only twelve employees—gave all of his employees favorable reviews simply because they all were performing favorably, and not because he was incapable of properly evaluating them. Yet in spite of this evidence, the majority claims that Plaintiff has not shown that Defendant "deviated from its normal use of subjective evaluation procedures." Maj. Op. at 8.

The majority further faults Plaintiff for failing to prove "that Buckeye terminated women or older workers at a disproportionately high rate during the reduction in force." *Id*. While such evidence would have been beneficial to Plaintiff's case, it is simply not required in light of the other evidence that she has put forward to rebut Defendant's proffered rationale for terminating her. *See Geiger*, 579 F.3d at 623 (requiring a plaintiff in a reduction-in-force case to adduce "additional

direct, circumstantial, *or* statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" (emphasis added) (internal quotation marks omitted)).

Despite citation to *Rowe*'s requirement of careful scrutiny in subjective-criteria cases, the majority does nothing to embrace *Rowe*'s charge to carefully scrutinize employment decisions based on subjective evaluations "in order to prevent abuse." 690 F.2d at 93. Instead, the majority glibly accepts Defendant's emphasis on subjective criteria as a valid business judgment. The majority's inattention to Defendant's use of subjective criteria is only magnified by the procedural posture of this case. After all, the validity of a subjective review is an issue of fact ultimately best left to the fact-finder. *Ray v. Oakland Cnty. Circuit Court*, 355 F. App'x 873, 885–86 (6th Cir. 2009). And if we view the facts in Plaintiff's favor—as we must on summary judgment—the competing accounts about Plaintiff's subjective qualifications suggest the need for a far more diligent inquiry than has been indulged by the majority here.

Given the above, clear disputes of material fact remain as to pretext. Because Plaintiff should not be shouldering the entire burden of proving actual intentional discrimination at the summary judgment stage, this case was prematurely decided. Accordingly, I respectfully dissent.