CLAY, Circuit Judge,
dissenting.
The majority mischaracterizes the dissent’s argument as well as the appropriate legal standard to be employed under the circumstances of this case. The issue is not simply whether the use of subjective criteria, in and of itself, demonstrates discrimination in a reduction-in-force case. Rather, the issue is whether there is enough evidence, circumstantial or otherwise, to suggest that discrimination was at least one of the factors motivating Plaintiffs termination, under circumstances *452 where discrimination could be masked under the cloak of subjectivity. White v. Baxter Healthcare Corp., 533 F.3d 381, 400 (6th Cir.2008); see Griffin v. Finkbeiner, 689 F.3d 584, 594 n. 7 (6th Cir.2012) (noting that “single-motive and mixed-motive theories are not distinct claims, but rather different ways of analyzing the same claim” and the decision about which theory the case involves “may not always occur before the summary-judgment stage”). See also Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 461 (6th Cir.2004) (“[Sjubjective reasons provide ready mechanisms for discrimination.” (internal quotation marks omitted)).
Plaintiff Charlotte Beck, who was over fifty years old and the only female twelve-hour operator at Defendant’s Lima plant, was terminated after sixteen years of well-reviewed, discipline-free performance. To justify Plaintiffs termination, Defendant used a system heavily reliant on subjective criteria. Defendant then applied its system to Plaintiff in a manner inconsistent ■with its own established procedures. Furthermore, the record demonstrates that Defendant solicited the input of Plaintiffs direct supervisor, then ignored his input when it failed to comport with the negative reviews of Plaintiff produced by Defendant’s Design Team. Under these circumstances, sufficient evidence that Defendant’s decision was pretextual renders this case inappropriate for disposition at summary judgment. For these reasons, I respectfully dissent.
In absence of direct evidence of discrimination, the plaintiff must first make out a prima facie case for discrimination by showing that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was replaced by someone outside of the protected class. Geiger v. Tower Auto., 579 F.3d 614, 622 (6th Cir.2009); Helmick v. Cincinnati Word Processing, Inc., 45 Ohio St.3d 131, 543 N.E.2d 1212, 1215 n. 2 (1989) (applying McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to discrimination claims filed under Ohio law). Because Plaintiffs termination arose as part of a work force reduction, “this [Cjourt has modified the fourth element to require the plaintiff to provide ‘additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.’ ” Geiger, 579 F.3d at 623 (quoting Barnes v. GenCorp, 896 F.2d 1457, 1465 (6th Cir.1990)); see also Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 785-86 (6th Cir.2007). After the plaintiff has made out a prima facie case of discrimination, the employer must present a legitimate, non-discriminatory reason for the termination. Geiger, 579 F.3d at 626. The burden of production then shifts back to the plaintiff to show that the employer’s proffered nondiscriminatory reason was pretext. Id.
Defendant in the instant case concedes that Plaintiff made out her prima facie case, and the parties agree that the reduction in force satisfies Defendant’s burden of production. See Beck v. Buckeye Pipe Line Servs. Co., No. 3:10-cv-319, 2011 WL 2076487, at *3 (N.D.Ohio May 25, 2011). Accordingly, the sole issue for our review is whether Plaintiff has met her burden of production as to pretext. The majority concludes that Plaintiff failed to satisfy this burden. In so holding, the majority confuses Plaintiffs burden of production with a burden of persuasion, and imposes a “pretext-plus” standard firmly rejected by the Supreme Court and this Court’s precedents.
In Reeves v. Sanderson Plumbing Prods., Inc., the Supreme Court estab *453 lished that judgment as a matter of law for a defendant in an employment discrimination case may be appropriate under certain circumstances even if the plaintiff satisfies her burdens to show a prima facie case and pretext. 580 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Of course, depending on the circumstances, a prima facie case and a showing of pretext can also support judgment for the plaintiff. Id. at 147-48, 120 S.Ct. 2097. Accordingly, “because a prima facie case and sufficient evidence to reject the employer’s explanation may permit a finding of liability,” a court “err[s] in proceeding from the premise that [the] plaintiff must always introduce additional, independent evidence of discrimination.” Id. at 149, 120 S.Ct. 2097. Rather, whether judgment is appropriate remains a heavily-context driven inquiry that “depends on a number of factors ... [including] the strength of the plaintiff’s prima facie case, the probative value of the proof that the employer’s explanation is false, and any other evidence that supports the employer’s case and that properly may be considered on a motion for judgment as a matter of law.” Id. at 148-49, 120 S.Ct. 2097.
In Blair v. Henry Filters, Inc., we extended the rationale of Reeves to the summary judgment stage and concluded that “to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant’s proffered rationale.” 505 F.3d 517, 532 (6th Cir.2007). Accordingly, we held that a plaintiff “d[oes] not need to produce additional evidence to support a finding of pretext; the evidence that [she] produced in support of [her] prima facie case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext.” Id.
A plaintiff can demonstrate pretext by one of the following three showings: “that the employer’s stated reason for the adverse employment action (1) ha[d] no basis in fact; or (2) was not the actual reason; or (3) was insufficient to explain the employer’s action.” White, 533 F.3d at 393. The first category implicates evidence “that the proffered bases for the plaintiffs discharge never happened,” while the second category requires that the plaintiff “admit[ ] the factual basis underlying the employer’s proffered explanation and further admit[ ] that such conduct could motivate dismissal.” Manzer v. Diamond Shamrock Chems., Co., 29 F.3d 1078, 1084 (6th Cir.1994). The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not subjected to the same adverse employment decision even though they engaged in substantially identical conduct to that which allegedly motivated the plaintiffs termination. Id.
In the instant case, Plaintiff proceeded primarily down the second of these paths. She has not disputed that Defendant was experiencing a company-wide reduction in force at the time of her termination. However, she questions whether the reduction was the real basis for her dismissal, given that Defendant never produced a satisfactory explanation for why Plaintiff was selected for termination instead of one of her younger, male colleagues. In contesting Defendant’s explanation — that Plaintiff was terminated because she received low assessment scores from the Design Team — Plaintiff raises several compelling challenges to her evaluation. These challenges create at least a material issue of fact about whether “an illegal motivation was more likely than [the reason] offered by [Defendant].” Id.
First, Plaintiff points out that the Ohio courts find it “suspicious” when an employ *454 er chooses “to fire a qualified, older employee [while] retain [ing] younger ones” in a reduction in force. Hoffman v. CHSHO, Inc., No. CA2004-09-072, 2005 WL 1799307, at *4 (Ohio Ct.App. Aug. 1, 2005) (citing Woodhouse v. Magnolia Hosp., 92 F.3d 248, 253 (5th Cir.1996)). Under these circumstances, the Ohio courts require the Defendant “to articulate reasons for singling out an employee who is within the statutorily-protected class for termination, while retaining [an] employee who is outside that class.” Id. Defendant has not met this standard.
As a starting point, it bears mentioning that Defendant has never contended that Plaintiffs termination was justified because she was either lacking, or fell appreciably behind her colleagues, in terms of her objective skills or qualifications. This, together with the other probative evidence of discrimination in the case, should establish a triable issue as to pretext. Under our precedents, when a plaintiff demonstrates that she is “as qualified as if not better qualified than [her retained colleagues],” summary judgment is inappropriate. Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 815 (6th Cir.2011) (internal citations omitted).
Significantly, this conclusion is only bolstered by the fact that Defendant has all but admitted that the decision to terminate Plaintiff was based entirely on subjective criteria. The Design Team’s evaluation process contained two components: an objective qualification component (worth roughly forty percent of the employee’s score), and a subjective component (worth the remaining sixty percent). Beck, 2011 WL 2076487, at *1-2. The objective portion, known as the “A” score, measured the employee’s “technical ability or the physical ability to perform a particular task;” whereas the “B” score represented whether the employee would “fit in” with
Defendant’s “new culture,” as judged by “being accountable for [one’s] actions, taking initiative, being a team player, [and] having an entrepreneurial outlook.” Id. Defendant conceded at oral argument that Plaintiffs “A” score was within the range of the employees who were retained by the company. However, Defendant provided no explanation for why it valued its subjective component over the objective component, or why it chose this substantially subjective approach over alternatives that would be less open to criticism. Rather, it is apparent from the record that Defendant deliberately used a system which did not emphasize objective factors, such as education or training credentials, seniority in the company, or simple technical skills. Any of these factors, or a simple recalibration of the “A” and “B” scores might have removed or reduced subjectivity in the selection process.
This Court has repeatedly emphasized that decisions made on the basis of subjective criteria, such as whether an employee is a team player or whether she would fit into a new corporate culture, can “provide a ready mechanism for discrimination,” and thus should be “carefully scrutinized.” Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 93 (6th Cir.1982); see also Hedrick, 355 F.3d at 461 (6th Cir.2004). Although being a “team player” may have been an important consideration for Defendant in carrying out its reduction in force, it should not be treated as an absolute defense to what may amount to unlawful discrimination. Idemudia v. J.P. Morgan Chase, 434 Fed.Appx. 495, 504-505 (6th Cir.2011) (citing Wexler v. White’s Fine Furniture, 317 F.3d 564, 576 (6th Cir.2003)). Additionally, the majority has far too quickly dismissed the inconsistencies committed by the Design Team in performing Plaintiffs assessment. Plaintiff has provided credible evidence from which to infer that she *455 did not receive a review by the required number of individuals, that the individuals who reviewed her were not sufficiently familiar with her work performance, and— most damning of all — that the Design Team solicited, and then deliberately disregarded, a favorable review of Plaintiffs performance by her direct supervisor when they found they had insufficient information to complete Plaintiffs review under the Design Team process. The majority’s abrupt discharge of this last piece of evidence is particularly problematic, because it ignores the legitimate possibility that Plaintiffs supervisor — who was a supervisor over only twelve employees — gave all of his employees favorable reviews simply because they all were performing favorably, and not because he was incapable of properly evaluating them. Yet in spite of this evidence, the majority claims that Plaintiff has not shown that Defendant “deviated from its normal use of subjective evaluation procedures.” Maj. Op. at 451.
The majority further faults Plaintiff for failing to prove “that Buckeye terminated women or older workers at a disproportionately high rate during the reduction in force.” Id. While such evidence would have been beneficial to Plaintiffs case, it is simply not required in light of the other evidence that she has put forward to rebut Defendant’s proffered rationale for terminating her. See Geiger, 579 F.3d at 623 (requiring a plaintiff in a reduction-in-force ease to adduce “additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons” (emphasis added) (internal quotation marks omitted)).
Despite citation to Rowe’s requirement of careful scrutiny in subjective-criteria cases, the majority does nothing to embrace Rowe’s charge to carefully scrutinize employment decisions based on subjective evaluations “in order to prevent abuse.” 690 F.2d at 93. Instead, the majority glibly accepts Defendant’s emphasis on subjective criteria as a valid business judgment. The majority’s inattention to Defendant’s use of subjective criteria is only magnified by the procedural posture of this case. After all, the validity of a subjective review is an issue of fact ultimately best left to the fact-finder. Ray v. Oakland Cnty. Circuit Court, 355 Fed.Appx. 873, 885-86 (6th Cir.2009). And if we view the facts in Plaintiffs favor — as we must on summary judgment — the competing accounts about Plaintiffs subjective qualifications suggest the need for a far more diligent inquiry than has been indulged by the majority here.
Given the above, clear disputes of material fact remain as to pretext. Because Plaintiff should not be shouldering the entire burden of proving actual intentional discrimination at the summary judgment stage, this case was prematurely decided. Accordingly, I respectfully dissent.